## WILLIAMS V. SWETLAND.

1. HOMESTEAD: ESTOPPEL. Where real property was conveyed by a deed in which it was described as the premises on which the grantor resided at the time of the conveyance; *held*, that in an action between the grantor and those claiming under the grantee, such recital is conclusive evidence that the premises were occupied as a residence by the grantor when the deed was executed.
2. SAME. A husband may fix or change his homestead without the assent of his wife. WRIGHT, C. J., dissenting.
3. SAME: DISCLAIMER. A conveyance by a husband, without the concurrence of his wife, of premises occupied as a home for the grantor's family, is invalid, even when the grantor disclaimed at the time the conveyance was made that the property was his homestead.
4. TRESPASS: DEFENSE IN EJECTMENT. A defendant in an ejectment suit, who is in possession as a trespasser or intruder, can not protect himself in such possession by showing an outstanding title in a stranger.

*Appeal from Cedar District Court.*

TUESDAY, NOVEMBER 8.

THIS was an action to recover possession of lots eleven and twelve, in block thirty-four, in Tipton. The defendant answered that on the 16th of July, 1856, the plaintiff, being the owner of said lots, and being seized thereof in fee simple, by his deed of conveyance of that date, duly executed, acknowledged, delivered and recorded, sold and conveyed said lots to one James H. Gower, and covenanted to warrant and defend the said premises to said Gower, who, on the 24th July, 1857, sold and conveyed the same to the defendant, who thereby became seized and possessed the same.

The plaintiff replied that at the time of making the deed to said Gower, he, the said plaintiff, was a married man, and the head of a family, and as such used and occupied the premises as a homestead, and that his wife, Anna Williams, then and still living, did not sign or concur in said conveyance. He further replied that the conveyance to Gower was a mortgage only, and was intended as a security for the pay-

ment of money; that simultaneously therewith, said Gower executed and delivered to plaintiff an agreement to convey to him the lots on the payment of two promissory notes amounting to $1,600; that said agreement was recorded Sept. 23d, 1856, and defendant had due notice of the same before his purchase from Gower.

The defendant rejoined, denying the facts set up in the replication, and averring that the plaintiff, before the commencement of the suit, had assigned the said agreement to other parties, whereby his interest in the premises, if any he had, had expired.

The sur-rejoinder of the plaintiff admitted the assignment of the agreement, but averred that at the time of said assignment, he, with his family, occupied it as a homestead. This last averment was denied by defendant, and upon the issue thus made, the parties went to trial before the court instead of a jury.

The testimony was, that the plaintiff was married to his wife, Anna Williams, in September, 1834, in Nova Scotia, and that they had two children. B. Frazer testified that Williams and a woman and children resided on the premises. They moved away in October, 1857; had resided there two years. That Williams first came with his housekeeper, and afterwards, in January, 1857, his wife and children came from the east. The first woman was there when the house was built, and lived with him until his wife and children came.

F. P. FELL. Williams and his wife lived in the house nearly a year. On the 23d July, 1856, thinks the house was not built; thinks the stable was.

J. R. SNYDER. Conveyed the lots to Williams, in October, 1855. Williams and wife occupied the premises. His wife came on in January, 1857. He left with his family in November 1857.

JOHN GRAVEY. Knew the parties; had known Williams for ten years; talked with him prior to his wife's coming on. He said his wife chose to live in Massachusetts and remain

with the children there. She had a home there. She left there and arrived here in December, 1856. Was present when the deed was made by Williams to Gower. Williams told witness that he wanted his wife to come on, but she did not care to, and he expected that he would have to go back there. Had since told witness he had made improvements in Hardin county, and that was his residence. At the time he made the deed to Gower, Williams disclaimed the property as a homestead. Gower spoke of it.

The deed from plaintiff to Gower was given in evidence, together with the agreement of Gower, of the same date, to convey the premises to plaintiff on the payment of the notes for $1,600. This agreement was not acknowledged and certified, but was filed for record, September 23d, 1856, and was on the same day assigned to Dunsmore and Chambers. On the 13th October, 1857, the plaintiff's declaration, as to his homestead, was recorded. There was also given in evidence, Gower's deed to defendant, and the transcript of a judgment in a suit for the foreclosure of a mortgage on the premises, in favor of Dunsmore and Chambers, against the plaintiff, under which the lots were sold on execution by the Sheriff, and conveyed to Dunsmore and Chambers, March 27th, 1858.

The court ruled that the premises were not the homestead of the plaintiff, and that his right of possession in the same expired on the execution of the sheriff's deed to Dunsmore and Chambers. Judgment was accordingly rendered for the plaintiff for forty-five dollars, as for the rent of the premises three months, at fifteen dollars a month. To this ruling of the court the plaintiff excepted.

During the progress of the trial the court ruled that the deed from Williams to Gower, and the agreement of Gower to convey the premises to Williams on the payment of the money stipulated, were to be taken together as one instrument, and that the said conveyance was but a mortgage ; that the assignment by plaintiff to Dunsmore and Chambers, if the agreement of Gower did not divest the plaintiff of the

possession of the premises, nor defeat his right to recover and that the recording of the agreement of Gower, was notice to defendant of the nature of the transactions between Gower and Williams. To all these rulings of the court the defendant excepted. Both parties appeal.

*Richman & Bro.* for the plaintiff, argued: 1. The proof shows that the property in controversy was a homestead when the deed to Gower was executed. 2. That the bond and deed constituted a mortgage to secure the payment of money, Code of 1851, sections 2094–5; and that it may be shown to be such in an action at law, *Hayworth* v. *Worthington et al.*, 5 Blackf. 361; 2 Mumf. 40; 15 John. 555; 14 Wend. 63; 4 Kent. 143; *Hall* and *Cochran* v. *Savill.* 3 G. Greene 37; Code, section 1210; section 3, chapter 49 of the laws of 1855, makes the record of the bond notice.

*Clark & Bro.* for the appellant.

I. The deed from Williams to Gower can not be treated as a mortgage in this action: 1. The action of right is a strictly legal remedy, and mere equities can not be recognized or adjusted therein; constitution of 1857, article 5. section 6; *Claussen* v. *Lefrenz*, 4 G. Greene 224. 2. To recover, the defendant must show a legal interest and possessing title. 2 Greenl. Ev., section 303; Adams' Eq. 32, notes; *Page* v. *Cole*, 6 Iowa 153. 3. A court of law must treat this deed as an absolute conveyance, 4 Kent. 141; *Baker* v. *Thrasher*, 4 Denio 495; *Porter* v. *Green et al.*, 4 Iowa 571; Code of 1851, section 2097; *Webb* v. *Rice*, 6 Hill 208; *Watkins* v. *Gregory*, 6 Blackf. 123; Willard's Eq. 432.

II. Possession in the defendant, though forcibly acquired, may be defended by showing title in the defendant; *Seely* v. *Morse*, 16 John. R. 200.

III. If the deed to Gower must be construed in connection with the bond back to Williams, still Gower took the legal title as *trustee*, and was entitled to the possession; *Ba-*

ker v. *Thrasher, supra; Palmer* v. *Gurnsey*, 7 Wend. 248; *Cooper* v. *Whitney*, 3 Hill 95.

IV. This can only be construed as a conditional sale—an absolute sale with an agreement to convey; *Conway Ex'rs.* v. *Alexander,* 7 Cranch 218; *Gower* v. *Payne*, 18 Wend. 518; 6 Page 480; 8 Ib. 243.

V. This bond was not properly recorded, and did not operate as notice to Swetland; Code of 1851, sections 1211, 1212. Chapter 49, acts 1855 does not amend the provisions of the Code above cited, and provides only for acknowledgments taken out of the State. See the title of the chapter. Any other construction would render it unconstitutional. Constitution of 1857, article 3, section 29; *The Sun Insurance Company* v. *The Mayor*, &c., 4 Seld. 241.

VI. The evidence does not show that the premises were occupied as the homestead of the plaintiff, when the deed to Gower was executed.

STOCKTON, J.—1. The plaintiff assigns for error the ruling of the court, that the premises conveyed to Gower did not, at the time, constitute a homestead. The evidence upon which the finding of the court was based, is all contained in the record. It does not show that the wife and children of the plaintiff resided with him upon the premises at the date of the deed. They had not, at the time, arrived from the east. One of the witnesses thinks the house was not built on the lots at the date of the deed. Another witness, however, says that the plaintiff occupied the premises from October, 1855, and the deed to Gower recites that they are "the same premises on which I now reside." This, we think, is conclusive of the fact that plaintiff resided on the premises at the date of the deed. It must operate in a manner as an estoppel on the defendant to deny the fact of such residence. He lived upon the premises with his housekeeper, awaiting the arrival of his wife and children from the east. The inference we think is a natural one, that he considered it as his house. There is nothing from which it can be concluded that he

deemed his home to be in Massachusetts. His remarks to the witness, Gravey, that his wife chose to remain with the children in that State, where she had a home; that he wished her to come on, but that she did not care to do so, and that he expected to have to go back to Massachusetts, are not inconsistent with the fact that the plaintiff had chosen the premises in controversy for his home, and that he was preparing it for the reception of his family, on their arrival from the east. The assent of the wife was not necessary to the act of the plaintiff fixing his homestead. He could change his homestead without her assent. If adopted as his home, the absence of his wife did not make it any the less his homestead.

Nor does the language of the plaintiff at the time of making the deed, disclaiming that the premises were his homestead, solve any difficulty in the case. If the premises had been selected and adopted by the plaintiff as the appointed home of his family, although he might exchange the same for another, he could not, without the concurrence of his wife, convey the same away. The evidence does not show that at the time of the conveyance the plaintiff had any design of changing his residence to Hardin county. What he said about having made improvements there, and of his design to remove there, was long afterwards. We are therefore of opinion that the court ruled incorrectly upon the testimony, in its decision that the premises were not a homestead.

2. The plaintiff likewise assigns for error the ruling of the court that the plaintiff's right of possession expired upon the execution of the sheriff's deed to Dunsmore and Chambers. The plaintiff, with his family, abandoned the possession of the premises in November, 1857, and the defendant took possession in December following. The plaintiff now sues to recover the possession. Had he remained in possessio nhe might have defended his right thereto against all persons not showing a better title than himself. Having abandoned the premises, however, he labors under this disadvantage at least, that he must show not only a better right than

the party in possession, but a better right than the title. Such party may plead as outstanding title in some other person. As between the plaintiff and the defendant, the plaintiff was entitled to recover on his better title. The defendant, however, relies on an outstanding title in Dunsmore and Chambers better than the plaintiff's. He claims that by virtue of the sale of the premises under the decree of foreclosure, and the conveyance by the sheriff to the purchaser, that the interest of the plaintiff in the premises was determined. Was he entitled to rely on this fact to defeat the plaintiff's right of recovery? We think not.

It is alleged in the replication of the plaintiff to the defendant's answer, that "the defendant is a mere intruder upon the premises, and obtained possession thereof by fraud, force and violence, and holds the same fraudulently, forcibly and violently, against the rights of the plaintiff." The evidence tends strongly to support this position. The house was opened in the absence of the plaintiff, and taken possession of by Swetland, the defendant. No license or authority for thus taking possession, is shown. One who is in possession as a mere trespasser or intruder, can not protect himself by setting up an outstanding title in a stranger. *Perryman* v. *Callison*, 1 Overton 515; *Duncan* v. *Harder*, 4 John. 202; *Livingston* v. *Walker*, 7 Cow. 637; *Bogert* v. *Schanber*, 7 Cow. 187.

Swetland was perhaps at the time claiming title to the premises by virtue of his deed from Gower. But by whatever title he claimed to take possession, it was without the consent of the plaintiff and without process of the law. Under the circumstances he was but a trespasser, and was not entitled to show an outstanding title in Dunsmore and Chambers better than that of the plaintiff.

The counsel have discussed other questions, and among them the question whether the deed of Williams to Gower was a mortgage, and whether the recording of the bond given by Gower to Williams was notice to the defendant. As we are of opinion the deed from Williams to Gower conveyed

no title, it becomes unnecessary for us to notice the points made by the counsel.

WRIGHT, C. J., *dissenting.*—What is said in the foregoing opinion as to the right of the husband to change the *homestead without the assent of the wife,* is calculated, in my opinoin, to lead to a misapprehension of her rights as declared by section 1462 of the Code. I do not concur in the view expressed, nor can I regard it necessary to the disposition of the cause. If it was I should present the reasons for my dissent more at length.