15411

CAMPBELL v. CAMPBELL *ET AL.*

(20 S. E. (2d), 237)

(See 189 S. C., 491, 1 S. E. (2d), 784)

68

September, 1941.

*Messrs. Hart & Moss* of York and *Messrs. Wilson & Wilson* of Rock Hill, counsel for appellant,

*Messrs. Finley & Spratt* of York, counsel for respondents,

May 13, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

The principal question to be determined in this appeal is whether a minor child can maintain an action either at law or in equity against a parent for maintenance and support. A subsidiary question is, whether counsel fees for services rendered on behalf of the minor child in such action may be awarded by the Court.

This cause was originally brought by I. J. Campbell, Jr., against his wife, Elizabeth Moore Campbell, for the annulment of their marriage. The Circuit Court adjudged the marriage valid and legal, and upon appeal we affirmed the judgment. *Campbell v. Moore*, 189 S. C., 497, 1 S. E. (2d), 784. In his report the Referee to whom the cause was referred, recommended that the child of the marriage, Lillian Johnson Campbell, be made a party to the cause in order that a full inquiry might be made as to the proper amount to be paid by the appellant for her support and maintenance during minority. This recommendation was approved by the Circuit Court, and we affirmed in *Campbell v. Moore, supra.* Thereafter by proper order the infant was made a party, a guardian *ad litem* appointed, and a petition filed setting up her claim for maintenance and support, to which the appellant filed an answer.

When the issues were referred the second time to the Referee, considerable testimony was taken, and he recommended that I. J. Campbell, Jr., the appellant and father of the infant, should be required to pay for her maintenance and support a graduated amount, commencing at $15.00 per

month, and increasing with the age and needs of the child. He also recommended that her attorneys be allowed a fee of $500.00 for their services, to be paid by appellant, and that he pay all costs of the action.

Upon appeal, the Circuit Court modified the findings of the Referee, and ordered judgment to be entered against appellant in the sum of $1,200.00, which covered the period from the date of the minor's birth, on January 18, 1935, to the date of the hearing, September 18, 1941, based upon $15.00 per month, with interest after September 18, 1941, until paid. It was further ordered that appellant pay the sum of $15.00 per month after September 18, 1941, for the maintenance and support of his daughter until the further order of the Court. The case was left open with leave to either party to thereafter apply for a modification of the order because of changed conditions. The lower Court likewise determined that a fee of $200.00 for the attorneys representing the infant was reasonable and proper, and ordered that judgment be entered for this amount against the plaintiff. From this judgment he appeals and raises the issues which we have stated, which were likewise raised and argued before the Referee and the Circuit Court.

A brief factual background will be enlightening.

I. J. Campbell, Jr., and Elizabeth Moore were married on September 7, 1934. They were residents of Clover, in York County, and at the time of their marriage he was 19 years of age and she was 17. The infant, Lillian Johnson Campbell, is a child of this marriage, and at the time this case was tried she was about five years of age. Immediately after the marriage, in 1934, the plaintiff abandoned his wife, moved his residence to the State of North Carolina, and there obtained a divorce. It is admitted that he has never contributed anything to the support and maintenance of his infant child. The mother, Elizabeth Moore Campbell, and the child lived in the home of her parents. She and her child were without worldly means, and they were supported by her brothers and sisters. When the minor was about three years of age, the

mother left her in the care of her grandparents, Mr. and Mrs. H. E. Moore, and went to Charlotte to obtain work, where she is now employed and making hardly enough to support herself.

One ground of appeal raises the point that the award for support is excessive in view of the earnings and property holdings of the appellant. We have reviewed the record thoroughly, and entertain no doubt of the propriety of this award under the facts. It is based upon competent evidence, and the decree of the Court thereabout should not be disturbed.

The appellant takes the position that a minor child cannot by any form of action maintain a civil suit against the father for maintenance and support in the absence of a statute authorizing it, and that an award for support may be made only as an incident to a divorce or alimony proceeding, or be enforced by criminal proceedings under Section 1123, 1932 Code.

The question has never been directly passed upon in this State, but there is some support for this contention in other jurisdictions. The case of *Rawlings v. Rawlings,* 121 Miss., 140, 83 So., 146, 157, 7 A. L. R., 1259, decided in 1919, which is cited and relied upon heavily by the appellant, undoubtedly supports his view, but we cannot agree with the reasoning and holding in that case. The decision in the *Rawlings case* is apparently based upon the theory that the obligation of a parent to support his child is merely moral. It was considered that a direct suit by an infant against a parent for support and maintenance should not be encouraged, since such a suit would adversely affect the repose of society; would tend to disturb the cordial relationship that should exist by virtue of blood ties, and render parental discipline ineffective.

The opinion in the case of *Rawlings v. Rawlings, supra,* was rendered by a divided Court. Speaking for the minority upon the principle under discussion, Mr. Justice Ethridge,

in his dissenting opinion, used this striking apt and vigorous language: "I cannot concur in the holding that the repose of society would be adversely affected by maintaining the suit in the present case. Any society that can consent to see children neglected by able parents, and whose repose would not be more disturbed by seeing children starved, maimed, and brutally handled, than it would be by seeing the law make the parent fulfill his duties and obligations to his child, at the suit of the child, ought not to be tolerated at all. What philosophy is this, now promulgated, which says that suits in chancery will disturb society when criminal prosecutions of parents by children will not disturb it? What kind of society is it that will be more disturbed by a suit in equity than it will be when the helpless children are allowed to go hungry and unclothed, their vitality so lowered by starvation and exposure as to make them invalids, unable to perform the functions of citizenship, but, on the contrary, make them a burden, and perhaps a menace, to society? If there be such society in existence, it ought to be kicked off the earth, and forced to do its reposing in the abysmal pits of Gehenna, where children do not go."

Mr. Minor in his Institutes, Volume I, at page 405, states the common-law duty of a father thus: "The wants and weakness of childhood render maintenance by some one other than the child himself indispensable, and the voice of nature indicates the parent, that is, the father, as the fittest person to afford it. The duty of maintenance on the part of fathers in respect to their infant children is, therefore, a principle of natural law, the right to which, on the part of such children, is insisted upon as a perfect right by the most eminent authorities, as, amongst others, by Puffendorf and Montesquieu.    *    *    *"

The early doctrine that there was no legal liability or obligation on a parent to maintain and support his child, unless by force of some statute, has been repudiated by the great majority of American Courts.

By the great weight of judicial opinion in this country, parents having the ability to do so are under a legal duty, regardless of any statute, to maintain their legitimate minor children, the obligation being sometimes spoken of as one under the common law, and sometimes, as a matter of natural right and justice, and often accepted as a matter of course without the assignment of any reason. 39 Am. Jur., Section 45, page 664 *et seq.*; *Upchurch v. Upchurch,* 196 Ark., 324, 117 S. W. (2d), 339; *Murrey v. Murrey,* 216 Cal., 707, 16 P. (2d), 741, 85 A. L. R., 1335; *Myers v. Anderson,* 145 Kan., 775, 67 P. (2d), 542; *Doughty v. Engler,* 112 Kan., 583, 211 P., 619, 30 A. L. R., 1065. And see to the same effect 46 C. J., § 50, page 1270.

While it is true that the father's obligation to support his child is more commonly enforced indirectly rather than by direct proceedings on behalf of the child—such for instance as a divorce or alimony suit—in our opinion the legal liability of the father to support his infant child remains as well after as before a divorce or separation.

Courts—and especially Courts of equity—should be diligent to discover, and swift to remedy, the wrongs of helpless children. The parental obligation to support children is a legal one, and can be enforced in equity at the suit of the children appearing by guardian *ad litem,* even though no statute in express terms allows such an action. This, in our opinion, is the only effectual remedy to insure their support. To so hold does not in any way conflict with the public policy of this State. We have a criminal statute, Section 1123, 1932 Code, which makes it a misdemeanor for any ablebodied man or a man capable of earning a livelihood, to abandon or fail to supply the actual necessaries of life for his wife or his minor, dependent, unmarried children, without just cause or excuse. But this statute does not provide an exclusive remedy for the enforcement of the rights of children to support by their parents. The obligation exists

independent of the statute. No one, we think, can successfully contend that the criminal remedy standing alone could be considered adequate from the standpoint of the child who is legally entitled to support from its parent.

The State will not rely entirely upon the criminal law for the protection of children from abandonment and neglect by parents, for several reasons. As we have already stated, it is entirely inadequate for that purpose. The children are under the control and restraint of the parents, and have no sufficient intelligence and opportunity to set the criminal law in motion, or to attend and prosecute. It is contrary to human nature for them to want to prosecute; it accomplishes nothing for the child, as the placing of parents in jail does not clothe the body nor satiate the pangs of hunger. If the parent is placed in jail, he is not able personally to look after his child, and even if the fine imposed by the Court should be paid and applied to the needs of the child, this does not answer the problem. In either event the parent's resentment is aroused and his anger kindled, and the child will suffer more by resorting to such remedies.

We are also in accord with the judgment of the Circuit Court that counsel fees should be allowed the attorneys of the infant for services rendered in this action. We said in *Campbell v. Moore, supra* [189 S. C., 497, 1 S. E. (2d), 797] : "Since the child will be made a party to the action and steps taken to ascertain what will be a proper allowance for her maintenance, it would seem to be equitable that the counsel whose efforts brought about these results should be compensated."

This is the rule which we have followed in this State with reference to allowing counsel fees in alimony cases. We see no reason for not making it applicable in cases of this kind.

Judgment affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Baker and Stukes, and Circuit Judge L. D. Lide, Acting Associate Justice, concur.