ROBERT HAROLD DAVIS, by MILDRED GRANT, his natural guardian and next friend, petitioner-appellee, v. HAROLD DAVIS, respondent-appellant.

No. 48561.

(Reported in 67 N.W.2d 566)

Ted Sloane and Don Hise, both of Des Moines, for respondent-appellant.

Lorna L. Williams, Clyde L. Herring, County Attorney, and James A. Lorentzen, Assistant County Attorney, all of Des Moines, for petitioner-appellee.

GARFIELD, C.J.—This proceeding involves the construction of some of the provisions of chapter 252A, Codes, 1950, 1954, entitled "Uniform Support of Dependents Law", enacted in 1949 by the Fifty-third General Assembly as chapter 103.

Petitioner, age 30, brought the action under chapter 252A by his mother as natural guardian and next friend against his father to compel him to furnish support. Petitioner's parents were divorced in 1929 when he was six. His father (respondent herein) was ordered to pay child support of $5 a week until the boy became 18 and to furnish all clothing, medical services and educational supplies. Respondent married another woman in 1930. The mother married another man in 1931. The boy (Robert) has continued to live with his mother and, until her death in 1953, his maternal grandmother.

The pleadings admit petitioner is unable to maintain himself, an illness in childhood impaired a portion of his brain, he has never been—and is unable to be—employed. It appears without dispute Robert has no means, is a victim of cerebral meningitis since he was a year old, requires constant attention, and his mother devotes virtually all her time to his care. Her total income of $157 a month, allotted to her from her present husband's army pay, is insufficient for her own and petitioner's support. Respondent has not seen Robert nor contributed to his support since about July 1949.

Repsondent is a clerk in the Des Moines post office where he has been employed thirty years. His salary in 1952 was $4370. He owns twelve acres in Polk City on which he lives. He rents out nine acres of this ground. Respondent also owns a half interest in 160 acres in Canada. He inherited his realty. It is not incumbered.

Trial was in equity. It was decreed respondent pay $50 a month toward petitioner's support. Respondent has appealed to us.

I. Respondent contends a proceeding to compel support of an adult son by his father, both of whom reside in Iowa, cannot be maintained under the provisions of Code chapter 252A which, it is said, was passed for the specific object of forcing an absconding father to support his family. It is argued chapter 252A is inapplicable where both dependent and respondent live in Iowa since suit may be brought under Code chapter 252 to compel support. The effect of the argument is that chapter 252 provides the exclusive remedy and there is no remedy under 252A, where both parties reside in Iowa.

We think the argument is unsound. Its acceptance would require us to nullify many provisions of chapter 252A which clearly indicate it was intended to apply where, as here, both child and parent are residents of Iowa.

It is true, as respondent suggests, that generally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases. Courts throughout the land have so held emphatically and eloquently. This case plainly falls within this exception to the general rule.

In support of what we have just said see Pocialik v. Federal Cement Tile Co., 121 Ind. App. 11, 17, 97 N.E.2d 360, 363 ("The tendency in most jurisdictions in this country where the question has arisen * * * is to find that there is an obligation to support defective children who are unable to support themselves upon attaining their majority.") ; In re Glass' Estate, 175 Kan. 246, 262 P.2d 934; Williams v. West, Ky., 258 S.W.2d 468,

473 (holding the decided weight of authority is it is not necessary that the adult child live in the father's home); Breuer v. Dowden, 207 Ky. 12, 268 S.W. 541, 42 A. L. R. 146, and annotation 150, 154; Wells v. Wells, 227 N. C. 614, 44 S.E.2d 31, 1 A. L. R.2d 905, and annotation 910, 921; Van Tinker v. Van Tinker, 38 Wash.2d 390, 229 P.2d 333, 334; 39 Am. Jur., Parent and Child, section 69; 67 C. J. S., Parent and Child, section 17.

See also Anderson v. Anderson, 124 Cal. 48, 56 P. 630, 71 Am. St. Rep. 17; Perla v. Perla, Fla., 58 So.2d 689, 690; Borchert v. Borchert, 185 Md. 586, 591, 45 A.2d 463, 465, 162 A. L. R. 1078, 1081 ("The doctrine of liability in a father to support an incapacitated adult child seems to have permeated the courts of this country, in many cases without any statutory enactment to support it."); Commonwealth ex rel. Groff v. Groff, 173 Pa. Super. 535, 98 A.2d 449, 450.

Respondent's argument requires a consideration of chapter 252 entitled "Support of the Poor", as well as 252A, under which this action was brought. Section 252.1 in chapter 252 defines "poor person" as "those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor." Section 252.2 provides that parents of a poor person shall "relieve or maintain such person in such manner as, upon application to the township trustees * * *, they may direct." Section 252.6 states, "Upon the failure of such relatives so to relieve or maintain a poor person who has made application for relief, the township trustees * * * *may* apply to the district court * * * for an order to compel the same." (Emphasis added.)

We have held application to the township trustees and action by them thereon are initial steps which must be taken before liability attaches under chapter 252. Wright County v. Hagan, 210 Iowa 795, 800, 231 N.W. 298. Also action of the trustees in ordering or denying relief to a poor person under chapter 252 is not subject to review in court where they act in good faith or without abuse of discretion. Cherokee County v. Smith, 219 Iowa 490, 493, 258 N.W. 182; Hardin County v. Wright County, 67 Iowa 127, 131, 24 N.W. 754.

Section 252.7 provides that where the trustees apply to the district court it may order relief or maintenance only from

relatives "who shall be able" to furnish it. And section 252.12 states, "In all cases the party sought to be charged with the support of another may demand a jury trial upon the question of his obligation and ability to render such support * * *." The effect of these provisions is that chapter 252 requires support only from parents or other relatives who are able to furnish it. Cherokee County v. Smith, supra, 219 Iowa 490, 494–496, 258 N.W. 182. As we shall point out presently, chapter 252A contains no such limitation as applied to such a case as this, where the petitioner and respondent both reside in the same state. See section 252A.3(3).

It is evident respondent's attorneys insist petitioner's sole remedy is to proceed under chapter 252 in the hope he can persuade the township trustees or an overseer of the poor (see section 252.4) he is unable to assist in the relief of this unfortunate son. His argument states: "It is and has been appellant's contention that the public officers under chapter 252 would not institute any legal action against him in his present financial circumstances, seeking to hold him responsible for the support of his son in any amount."

It appears somewhat doubtful at best that petitioner could have obtained support from respondent by applying to the township trustees or an overseer of the poor under chapter 252. However that may be, we are clear he should not be relegated to such a course. Even before chapter 252A was enacted we held the relief provided by chapter 252 was neither exclusive nor adequate in a suit by the mother of a minor against the divorced father to require him to contribute to the child's support. Addy v. Addy, 240 Iowa 255, 263, 264, 36 N.W.2d 352, 357, 358, where we say concerning chapter 252 and other statutory provisions:

"The father's duty of support is not measured by these statutes. It is the right of the child to receive and the obligation of the parent to furnish support to the end resort to any of these statutes need not be had.

"The special statutory proceedings to which defendant refers do not purport to be exclusive and should not be so construed. Nor is the relief there provided adequate. Several decisions heretofore cited in support of our conclusion reject arguments

similar to defendant's here. See for example Campbell v. Campbell, supra, 200 S.C. 67, 20 S.E.2d 237."

See also Simonds v. Simonds, 81 App. D.C. 50, 154 F.2d 326, 13 A. L. R.2d 1138, and annotation 1142. It is unimportant here that the Addy child was a minor in view of respondent's continuing duty to support petitioner because of his physical and mental inability, throughout life, to care for himself. See authorities first cited in this division hereof.

In view of respondent's contention that chapter 252A was enacted solely to provide civil relief from an absconding parent and it has no application where both parent and child reside in Iowa it seems necessary to set out several provisions of the Act which indicate a contrary legislative intent. Emphasis is supplied by us.

The title of chapter 252A is, "AN ACT authorizing and prescribing the procedure for civil proceedings to compel the support of dependent wives, children and poor relatives *within and without the state.*"

Section 252A.1 states: "The purpose of this uniform chapter is to secure support in civil proceedings for dependent wives, children and poor relatives from persons legally responsible for their support." It does not add "where such relief was heretofore nonexistent" nor does it say "where petitioner and respondent are in different states." Of course the substance of either of these provisions could easily have been added.

Section 252A.2(1) defines "state" as used in chapter 252A as "any state, territory or possession of the United States and the District of Columbia." Plainly "state" includes Iowa.

Section 252A.2(4) provides: " 'Dependent' shall mean and include a * * * child * * * who is in need of and entitled to support from a person who is declared to be legally liable for such support by the laws of *the state or states wherein the petitioner and the respondent reside.*"

Section 252A.2(7) defines "Petitioner's representative" to include a county attorney or other public officer "charged by law with the duty of instituting * * * a proceeding under this chapter or under the laws of *the state or states wherein the petitioner and the respondent reside.*"

Section 252A.2(8) says, " 'Summons' shall mean and include a * * * notice * * * provided for by the laws of *the state, or states wherein the petitioner and the respondent reside* as the means for requiring the appearance * * * of the respondent in a proceeding instituted pursuant to this chapter."

Section 252A.3(1) provides, "A husband in one state is hereby declared to be liable for the support of his wife and any child or children under seventeen * * * *residing or found in the same state* or in another state having substantially similar or reciprocal laws, and * * * may be required to pay for their support * * * *in a proceeding instituted under this chapter.*"

Section 252A.3(2) is a provision identical with 252A.3(1) applicable to a mother of a child whose father is dead, cannot be found or is incapable of supporting the child. It contains the same language, "residing or found in the same state."

Section 252A.3 (3) provides: "The parents in one state are hereby declared to be severally liable for the support of a child seventeen years of age or older *residing or found in the same state* or in another state having substantially similar or reciprocal laws, whenever such child is unable to maintain himself and is likely to become a public charge." Incidentally the liability imposed by 252A.3(3) is not confined to parents who are able to furnish support. Therein the provision differs from sections 252.7 and 252.12 in chapter 252 to which respondent would relegate petitioner.

Section 252A.5 says: "A proceeding to compel support of a dependent may be maintained *under this chapter* in any of the following cases:

"1. *Where the petitioner and the respondent are residents of * * * the same state. * * *

"4. Where the respondent was or is a resident of * * * the initiating state and has departed or departs from such state leaving therein a dependent * * * entitled to support under this chapter and is believed to be a resident of * * * another state having substantially similar or reciprocal laws."

Subsection 1, just quoted, has direct application to this case. Subsection 4 authorizes a proceeding under chapter 252A to compel support from a parent who has absconded but we can

find no sufficient basis for respondent's argument the entire chapter has no application to any other situation.

Section 252A.6 provides: "1. A proceeding under this chapter shall be commenced by a petitioner by filing a verified petition in the court in the county of the state wherein he resides * * *.

"2. If the respondent be a *resident of * * * such state*" (i.e., the state wherein petitioner resides) "and the court has or can acquire jurisdiction of the person of the respondent under existing laws in effect in such state, such laws shall govern and control the procedure to be followed in such proceeding."

Much of respondent's argument rests on the language of section 252A.6(2) "such laws shall govern and control the procedure to be followed in such proceeding." It is contended this can be interpreted as providing that existing laws of the state as found in chapter 252 shall govern the entire proceeding. Respondent claims too much for the language just quoted.

Obviously the last two words of 252A.6(2), "such proceeding", mean a proceeding commenced *under this chapter by petitioner in court*. Nothing in chapter 252 authorizes a dependent to commence a proceeding in court. The only court action chapter 252 permits is the one township trustees or an overseer of the poor *may* institute in the district court. An action under 252A may be brought in municipal court. Section 252A.2(2). The words "existing laws in effect in such state" refer to laws under which the court "can acquire jurisdiction of the person of the respondent." And the words "such laws" refer back to "existing laws."

Further, the interpretation of section 252A.6(2) respondent urges upon us requires the nullification of several other provisions of chapter 252A herein quoted which clearly indicate a legislative intent contrary thereto. However, the construction we place upon 252A.6(2) is reasonable and also gives effect to such other provisions of the Act.

Aside from section 252A.6(2) respondent places some reliance upon the definition of "dependent" in section 252A.2(4) heretofore quoted. It is argued Robert is not a dependent within the meaning of the act because, it is said, respondent is not declared to be legally liable for Robert's support by the laws

of this state. In this respondent is mistaken. Section 252A.3(3), already quoted, expressly declares such liability if, as admitted, Robert is unable to maintain himself and if he is likely to become a public charge.

Section 252A.2(4) does not say "entitled to support from a person *who has been declared under existing laws* to be legally liable for such support." The wording of section 252A.6(2) demonstrates that when the legislature intended to refer to *"existing laws in effect in such state"* it so stated. Further, under numerous authorities first referred to in this division, the liability denied by respondent existed before the enactment of chapter 252A. Again, to accept respondent's argument at this point would be to nullify many provisions of the chapter.

One other section of chapter 252A should be mentioned— 252A.8: "This chapter shall be construed to furnish *an additional or alternative civil remedy* and shall *in no way affect* or impair *any other remedy,* civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter." As previously indicated, respondent contends chapter 252A, notwithstanding section 252A.8, does not authorize the granting of relief where it could be obtained under chapter 252. This is a denial of the "additional or alternative civil remedy" the legislature expressly intended chapter 252A to furnish and is inconsistent with what we held the law to be before 252A was enacted. See Addy v. Addy, supra, 240 Iowa 255, 263, 264, 36 N.W.2d 352, 357, 358.

Some of the procedure outlined in section 252A.6(3 to 16) is not authorized by our Rules of Civil Procedure. But these provisions apply only where petitioner and respondent reside in different states and have nothing to do with the situation here. Further, the act was formulated and enacted with the thought it would be adopted by many states with varying procedure. It is to be expected it would contain some provisions not previously in force in some states that might enact similar or reciprocal laws.

Our "Uniform Support of Dependents Law", chapter 252A, was drafted in 1948 by the New York Joint Legislative Committee on Interstate Cooperation. The Commissioners on Uniform

State Laws later prepared another law entitled "Uniform Reciprocal Enforcement of Support Act", approved in September 1950, and they did so because they disapproved the earlier Act drafted in 1948 partly because it provides for duties of support not previously provided for by statute. In short, one reason this 1950 Act was formulated is because the commissioners disapproved provisions of the 1948 Act which respondent here would, in effect, nullify. Evidently the commissioners had no difficulty in concluding that this 1948 Uniform Act applies where both petitioner and respondent are within the same state.

What is just said appears from the article in 37 American Bar Association Journal, page 93, et seq. by Prof. W. J. Brockelbank, chairman of the committee that drafted the Uniform Reciprocal Enforcement of Support Act for the Commissioners on Uniform State Laws approved in 1950. Referring to the 1948 Act (our chapter 252A) the article in the A. B. A. Journal says (page 96):

"As to * * * the parents (subsection c of section 3) the act itself is the source of the duty. In addition to the confusion noted, there is a real objection to the act itself creating duties of support. * * *

"Even if the act were passed in all states, the remedy afforded would be insufficient in some states and too drastic in others. In states having a wider local list of duties of support, local enforcement (*where both petitioner and respondent are within the same state*) would cover all cases while interstate enforcement (where petitioner is in one state and the respondent in another) would be incomplete * * *.

"It is believed that the Uniform Reciprocal Enforcement of Support Act has avoided the difficulties mentioned * * *. Thus the act has no theory of support of its own different or apart from that under already existing law in the states." (Emphasis added.)

If there is dissatisfaction with the provisions of chapter 252A which apply where both dependent and parent reside in this state the remedy is of course by appeal to the legislature. This court should not nullify these provisions under the guise of construction. What we said in Lorentzen v. Deere Mfg. Co.,

245 Iowa 1317, 1322, 66 N.W.2d 499, 502, is pertinent here: "We are not the judges of its wisdom; when the legislature has spoken in plain terms, we may not rewrite the statute in order to make what we may think is more desirable law. That is what we are invited to do here; we decline to enter the field of judicial legislation."

There are other fundamental rules of statutory construction here applicable. We will mention only two. In seeking the meaning of a law the entire Act and other related statutes (such as chapter 252) should be considered. Ahrweiler v. Board of Supervisors, 226 Iowa 229, 231, 283 N.W. 889; Eysink v. Board of Supervisors, 229 Iowa 1240, 1243, 296 N.W. 376, 378; Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 560, 1 N.W.2d 655, 660 ("Each section * * * must be construed with the act as a whole, and with every other section."); 82 C. J. S., Statutes, section 345a; 50 Am. Jur., Statutes, section 352, pages 352 to 354 ("All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone * * * or to give undue effect thereto.").

Respondent would have us give undue effect to the strained construction he places upon section 252A.6(2) and the definition of "dependent" in section 252A.2(4). His interpretation of the entire Act largely rests thereon.

The second elementary rule, closely related to the one just stated, is that, if fairly possible, it is our duty to give effect to every part and word of an Act. Iowa Mutual Tornado Ins. Assn. v. Fischer, 245 Iowa 951, 956, 65 N.W.2d 162, 165, and citations. The argument for respondent, as previously explained, gives no effect to, and actually nullifies, many provisions of chapter 252A which seem clearly to indicate the legislature intended it to apply to such a situation as this.

II. Respondent contends a proceeding under chapter 252A must be instituted and prosecuted by the county attorney. As previously stated, section 252A.2(7) defines a "Petitioner's representative" to include a county attorney. Section 252A.7 says, "It shall be the duty of all petitioner's representatives * * * to appear * * * on behalf of * * * the petitioner * * * at the time

the petition is filed and at all stages of the proceeding thereafter * * *."

The record indicates petitioner's mother first consulted an attorney of her choice concerning this proceeding. The attorney in turn consulted the county attorney's office and, at its suggestion, the state attorney general's office. Evidently the attorney was advised and concluded she (the attorney) could institute and prosecute the action and did so. At the beginning of the trial an assistant county attorney appeared, at petitioner's request, to assist the attorney who brought the action.

We are not persuaded the decree should be reversed on the ground the county attorney did not appear prior to the opening of the trial. There is nothing in chapter 252A which denies a petitioner the right to engage his own attorney if he so desires. The statute merely makes it the county attorney's duty to appear. We think a petitioner may forego the assistance of the county attorney, at least prior to the trial, if he so chooses. It is agreed the action is a civil—not a criminal—proceeding. Ordinarily such an action may, of course, be instituted by any practicing attorney. We should not read into chapter 252A a prohibition against such procedure.

■ III. Section 252A.3(3), before quoted, declares the parents are severally liable for support of a child, 17 or older, residing in the same state "whenever such child is unable to maintain himself and is likely to become a public charge." As previously stated, it is admitted petitioner is unable to maintain himself but it is argued it does not appear he is likely to become a public charge. The argument is largely based on two answers of Robert's mother on cross-examination that she would not put him in a public institution and she did not think he would live long enough to become a public charge.

Notwithstanding these two answers we think, as the trial court held, it sufficiently appears petitioner is likely to become a public charge if respondent does not contribute to his support. Clearly one may be a public charge without being kept in a public institution. Petitioner has no means or income of any kind and is unable to work. He cannot be left alone. His mother's only property is her four-room home, which is mortgaged. She is also indebted to a bank. The expense of caring for Robert and

herself exceeds her income by about $58 a month. She too is unable to earn because it requires virtually all her time to care for her son.

Chapter 252A does not provide that a dependent actually be a public charge before he is entitled to support. It is sufficient if he is likely to become one if support is not furnished by the respondent (and if he is unable to maintain himself). One purpose of the statute seems to be to require parents to contribute to the support of their children to the end they will not become public charges.

IV. Respondent contends he cannot be compelled to contribute to his son's support because, it is said, he is financially unable to do so.

As we have pointed out, chapter 252A does not limit liability for support in the situation we have here to parents financially able to furnish it. Section 252A.3(3). We note that subsections 1 and 2, respectively, of section 252A.3 require support of a child under 17 from a husband and mother, "if possessed of sufficient means or able to earn such means." But the language just quoted is not found in section 252A.3(3) applicable here.

It is doubtless true, as petitioner concedes, the circumstances and means of both parents and also the child should be considered in determining the amount either should contribute to the support of a child. See 67 C. J. S., Parent and Child, section 20j(2), page 721; 39 Am. Jur., Parent and Child, section 36. We think that was done here. Respondent has a good civil service job and substantial unincumbered property. He has not contributed to the support of his crippled son since about the middle of 1949. The boy's mother has carried the burden of his support during that time and has no property except her small home which is mortgaged. It is not inequitable that respondent should contribute $50 a month to Robert's support.

V. Finally, respondent complains that the judgment does not exempt his homestead from its operation. The judgment provides it "is a lien upon real estate now or hereafter owned by" respondent.

At best it is very doubtful if respondent is entitled to urge this complaint since the homestead character of any of his

real estate was not raised by pleading or otherwise in the trial court. Petitioner, however, prayed that the judgment to be entered against respondent be made a lien upon his real estate. See Ayers v. Ayers, 227 Iowa 646, 650, 288 N.W. 679; Hemenway v. Wood, 53 Iowa 21, 23, 3 N.W. 794.

In any event we are not persuaded the provision of the judgment above-quoted constitutes error in the respect asserted. It is held, almost without dissent, that alimony is not a debt but a duty of higher obligation and the spouse to whom it is awarded is not a creditor within the purview of exemption statutes. The foundation for these decisions is the inherent nature of the obligation to pay alimony. It does not arise from any business transaction but is founded on the natural, moral and legal duty of a husband to support his wife. It is not a debt, in a legal sense, during the marriage nor after that relation has been dissolved by divorce brought about by the statutory transgression of the husband.

In In re Guardianship of Bagnall, 238 Iowa 905, 938–942, 29 N.W.2d 597, 614–616 (Bliss, J.), the subject and most of our earlier precedents, with many others, are thoroughly discussed. We say, "On every occasion when this court has passed upon the question of whether any debt-exemption statute applies to the awarding or collecting of alimony, it has held, in agreement with the decisions of courts generally, that they have no application." See also 40 C. J. S., Homesteads, section 110; annotations 11 A. L. R. 123, 106 A. L. R. 669, 130 A. L. R. 1028.

We have held such a decree as was rendered here constitutes a lien on the homestead even though it is not described by name or legal description. Luedecke v. Luedecke, 195 Iowa 507, 509, 192 N.W. 515; Davis v. Davis, 228 Iowa 764, 773, 292 N.W. 804.

Although the liability adjudged against respondent may not, strictly speaking, be alimony (see 27 C. J. S., Divorce, section 202b(1), page 882), it surely is closely analogous to it. It does not arise from any business transaction but is founded on respondent's natural, moral and legal obligation to contribute to petitioner's support. This duty rests on a plane just as high as that to pay alimony. The logic of our decision in In re Guardianship of Bagnall, supra, and similar precedents is controlling here.

The exemption of the homestead is not alone for the

benefit of the husband or head of the family—it is for the family. Section 561.16, Codes, 1950, 1954; Daniels v. Morris, 54 Iowa 369, 371, 6 N.W. 532, 533; In re Guardianship of Bagnall, supra, 238 Iowa 905, 940, 941, 29 N.W.2d 597, 614, 615. In this connection petitioner, a son to whom respondent owed the duty of support, although living with his mother, is a part of the family of which respondent is the head. See Woods v. Davis, 34 Iowa 264, 265 ("Besides, the homestead law is intended for the benefit of the children as well as of the parents. Byers v. Byers, 21 Iowa 269. It does not accord with the spirit of the humane provisions of the statute, that the divorcing of the wife and awarding to her of the children, should deprive *them* of all interest in the homestead property [emphasis added].") ; Williams v. Swetland, 10 Iowa 51; Dougherty v. White, 112 Neb. 675, 200 N.W. 884, 36 A. L. R. 425, 428, and annotation 431; annotation 118 A. L. R. 1386, 1388.

This from In re Guardianship of Bagnall, supra, at pages 940, 941 of 238 Iowa, page 615 of 29 N.W.2d, is persuasive here: "Statutes protecting the homestead * * * are for the benefit of the husband, wife, and family. * * * It would be incongruous and unjust to hold that all of these exemptions from liability for ordinary debts should operate to the prejudice of the wife or children in a contest with the husband as to alimony and support money *when the principal reason for the exemptions was to secure these dependents*." (Emphasis added.)

It is true, as stated, respondent, as he had a right to do, married again after petitioner's mother divorced him. By so doing he obligated himself to support his second wife and their two minor children. One of these, age 15, is living with her married adult sister in California. A child, three, is living with the present wife. This second marriage appears also to have gone "on the rocks." The wife has sued respondent for divorce and they are living separately under the same roof. There is nothing in this subsequent marriage or the obligations respondent voluntarily assumed thereby which relieves him of his duty to furnish petitioner with support. Respondent's obligation to support the present wife and their children is no higher than that to contribute to petitioner's support.

Winter v. Winter, 95 Neb. 335, 340, 341, 145 N.W. 709, 712, 50 L. R. A., N. S., 697, 703, a leading case, says of a homestead exemption: "the protection of the family, and not the husband, is the object of the statute. It could never have been designed to allow a man to escape his obligations to his family. *Why, then, should it not protect the family against him as well as protect it against a creditor?* * * * By getting married again, he ought not to be permitted to relieve himself from the burden of supporting the child that he caused to come into the world." (Emphasis added.)

See also Wassung v. Wassung, 136 Neb. 440, 286 N.W. 340, 343; McIlwain v. McIlwain, 135 Neb. 705, 283 N.W. 845, 848; Quist v. Quist, 207 Minn. 257, 290 N.W. 561; 40 C. J. S., Homesteads, section 110, page 552.

Newburn v. Newburn, 210 Iowa 639, 642, 231 N.W. 389, holds that remarriage of the husband, together with the obligations thereby assumed, will not alone present such a change of circumstances as justifies modification of a divorce decree by reducing the periodic payments to the wife for herself and child support. Winter v. Winter, supra, 95 Neb. 335, 145 N.W. 709, 50 L. R. A., N. S., 697, 703, is among the precedents cited in support of the holding. It is also relied on in the dissenting opinion in Schooley v. Schooley, 184 Iowa 835, 857, 858, 169 N.W. 56, 11 A. L. R. 110, 122, which Malone v. Moore, 212 Iowa 58, 62, 236 N.W. 100, adopts as presenting the better rule.—Affirmed.

BLISS, OLIVER, WENNERSTRUM, THOMPSON, and LARSON, JJ., concur.

HAYS and MULRONEY, JJ., dissent.

HAYS, J. (dissenting)—In a case where an adult incapacitated child is seeking support from his father, both residing in Iowa, the trial court, as a court of equity, grants such relief and the father appeals. The majority opinion affirms the trial court and I respectfully dissent.

The opinion affirms upon two propositions: (1) inherent power of a court of equity and (2) chapter 252A, Code of 1950. Both, in my opinion, are unsound.

280

I.  As to the power of a court of equity, irrespective of any statute:

The opinion appears to rely upon Addy v. Addy, 240 Iowa 255, 264, 36 N.W.2d 352, 358, quoting therefrom as follows: "The father's duty of support is not measured by these statutes. It is the right of the child to receive and the obligation of the parent to furnish support to the end resort to any of these statutes need not be had." Of course, the Addy case is in no way material or the law announced there applicable to the instant case. It involved the right of a *minor* child to receive support from its parents. This case is concerned with the right of an *adult incapacitated* child to receive support.

Section 611.4, Code of 1950, states when a court of equity may act in the absence of statutory authorization. It says that an action in equity may be had in all cases where courts of equity had jurisdiction *before the adoption of this Code*. It first appears in the Revision of 1860. There is no doubt but that at common law, long before the adoption of the Code, the duty was recognized that a parent owed a duty to support his *minor* child and the matter was determined in equity. It does not follow from this, that equity has jurisdiction in the case of adults.

The statement in the opinion to the effect that the common law recognized an exception in the case of an incapacitated adult child and cast a duty upon the parent to support him is not, in my opinion, a correct statement and is not supported by the authorities. Annotation 1 A. L. R.2d 910. The only Iowa case cited is Addy v. Addy, supra. Such a duty does exist in Iowa and has existed for more than a hundred years, but it is solely under statutes which first appear in the Code of 1851, section 787, and now found in chapter 252, Code of 1950. Not only was the duty there created but the procedure for its enforcement was outlined. It provides for a jury trial, upon request, and is a matter for the law court. Section 805, Code of 1851 (section 252.12, Code of 1950). In Wright County v. Hagan, 210 Iowa 795, 231 N.W. 298, this court held a strict compliance with the statute was a prerequisite to recovery. In effect, the majority would overrule this decision and does ignore the statute. The duty created by statute is recognized, though attributed to the common law, and an entirely new, and heretofore unknown, pro-

cedure adopted. It may be that the provisions of chapter 252 are inadequate and cumbersome as claimed by the majority, but it is for the legislature and not the court to correct. Even assuming that chapter 252A creates a new civil remedy in cases of the type under consideration, the matter is still triable at law, since the said chapter does not grant equity the right.

While the instant case was tried in equity, such procedure was requested by respondent and no error may be predicated thereon. However, until and unless the legislature adopts the rule of procedure sanctioned here, I will ride along with the legislative enactments as they now exist.

II. The second proposition advanced in the majority opinion is that under chapter 252A petitioner is entitled to the relief asked. Assuming this proposition to be correct, the sole instance where petitioner even attempted to comply with the provisions of this chapter was the filing of a petition in the district court. From then on both petitioner and trial court apparently lost sight of the statute and proceeded under an assumed inherent right in a court of equity.

Two factors are advanced in the opinion as a basis for holding chapter 252A to be applicable.

(1). It is said that throughout the chapter is found repeated reference to the situation found in the existing case; that section 252A.3(3) specifically specifies such shall be dealt with under the provisions of said chapter. It is conceded that the chapter does refer to such a situation, and standing alone such reference would appear to make the chapter applicable. However, I respectfully submit that, when read and examined in the light of the wording and clear intent and purpose of the chapter, it is apparent that such was not the legislative intent. Section 10, chapter 103, Acts of the Fifty-third General Assembly, not appearing in chapter 252A as it appears in the Code, would seem to be applicable and intended to meet just such a situation.

(2). The real question, so far as chapter 252A being applicable here, is one of procedure and not substantive law—with the remedy—not the right. The majority opinion does not contend that this chapter creates a new substantive right, except perhaps as to the ability of the parent to pay. The duty created by the Code of 1851, now chapter 252, Code of 1950, is recognized.

It is claimed that chapter 252A creates a new procedural right. Section 252A.6(1) authorizes the petitioner to file a petition in the district court of the county wherein he resides. It says, "A *proceeding under this chapter* shall be commenced by a petitioner filing a verified petition in the [district] court * * *." (Italics mine.) In cases where applicable this chapter does create a new procedural right. This is discussed later herein. It does not in this case, in my opinion, create any right, procedural or otherwise.

Section 252A.6(2) provides: "If the respondent be a resident of or domiciled in such state [where petition is filed] and the court has or can acquire jurisdiction of the person of the respondent under *existing laws in effect in such state*, such laws shall govern and control the procedure to be followed in such proceeding." (Italics mine.)

Under the majority opinion, this section means nothing more than that the local laws shall govern and control the manner in which the notice to bring respondent into court is served. I think it has a much broader meaning. It is somewhat significant that by section 252A.6, subsections (3) and (4), dealing with instances where the parties do not reside in the same state, jurisdiction is attained by the giving of a summons, without reference to the existing laws. The majority opinion has this to say upon this question: " 'such proceeding' means a proceeding commenced under this chapter by petitioner in court." It does, and the term "proceedings" means "every step from the filing of the petition until the final determination of the controversy. It includes the issuance and service of process", International Paper Co. v. Commonwealth, 232 Mass. 7, 11, 121 N.E. 510, 511. See also Bankers Trust Co. v. Scott, 215 Iowa 1107, 246 N.W. 836. The opinion further says: "The words 'existing laws in effect in such state' refer to laws under which the court 'can acquire jurisdiction of the person of the respondent.' " They do say that and, as I contend, much more when read in the light of the entire section. The section (252A.6(2)) further says "such laws shall govern and control the *procedure* to be followed in such proceeding." (Italics mine.) In Bascom v. District Court, 231 Iowa 360, 364, 1 N.W.2d 220, it is said that "practice" and

"procedure" include the mode of proceeding and the steps by which a legal right is enforced as distinguished from the law which creates, defines and protects rights. Thus, under our decisions, these words "procedure" and "proceedings" appear to be synonymous unless it should appear that one or the other is used in a more restricted sense. The majority opinion would limit the meaning of the term "procedure" to the serving of the notice. Assuming this to be correct, there does not appear to be any like limitation given to the term "proceedings." Irrespective of the sense in which these two words may be used both refer to the remedy and it must be presumed that the right, for which they provide the remedy, is existent. Jurisdiction of the respondent, as used here, must imply an effective jurisdiction; that is with power to act, which means the court has jurisdiction of the subject matter. No matter how inadequate the law might be, if, under existing laws in effect in the state irrespective of chapter 252A, provision has been made by the legislature for the question to be determined in the courts of the state, such laws must be resorted to. This, it seems to me, is the clear intent and meaning of section 252A.6(2). Chapter 252 provides such, both as to right and remedy. The provision in chapter 252A for the filing of a petition in the court by a petitioner may be applicable to some states, which as a reciprocal measure adopt a like statute, but is inapplicable in Iowa.

It seems to me that the above express meaning and application of chapter 252A is further fortified when read in the light of the purpose and intent of the chapter. It is entitled "Uniform Support of Dependents Law." Throughout the chapter is found repeated reference to "another state having substantially similar or reciprocal laws." The entire method of procedure, except serving of notice, is foreign to our Rules of Civil Procedure.

From time immemorial it has been the primary duty of the state to care for its own poor. Since the Code of 1851 laws have existed in Iowa whereby this duty might be shifted to certain named parties where they were amenable to our courts. It is of no concern to Iowa how other states may handle like problems. However, with the growing number of cases where the one liable for support has departed into another state and beyond the reach of his home state, leaving the dependents as the burden of the

state, a serious problem was created. Only when and if the state to which the party has departed opens its courts for the enforcement of a duty existing in another state would a civil remedy be available. This uniform law was adopted to meet the situation. It is sort of a "you scratch my back and I'll scratch yours" arrangement. Section 252A.8 says it "shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and *available to the petitioner* in relation to the same subject matter." (Italics mine.) It is clearly an additional remedy in that it allows recovery from an absentee, which did not previously exist. It is not an alternative remedy as previously none existed, i.e., civil remedy. It does provide an alternative remedy in that there was existing a criminal remedy. It safeguards against a claim that proceeding under this chapter precludes use of the criminal remedy. Vincenza v. Vincenza, 197 Misc. 1027, 98 N. Y. S.2d 470. In my judgment, this chapter must be limited in application to cases where diversity of citizenship is involved.

III. A brief comment upon Division II of the majority opinion: Section 252A.7 says that it is the duty of the petitioner's representative to appear at *all* stages of the proceedings from the time of the filing of the petition. In the lower court the County Attorney's office appeared only when the actual trial commenced and then only as a friend of the court. He took no active part in the trial and files no brief and argument here. I am unable to follow the reasoning adopted by the majority opinion, as a more specific directive of a duty would be hard to phrase.

I would hold that chapter 252A is not available to the petitioner in this case; that chapter 252 is the proper remedy; that it is a matter triable only at law. I would reverse the decree of the trial court.

MULRONEY, J., joins in this dissent.