DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Jerome Wiczynski, appeals a judgment by the Lucas County Court of Common Pleas, Domestic Relations Division, denying appellant's motions to strike any prior judgment of the court and to dismiss the present proceedings for lack of jurisdiction. For the reasons that follow, the judgment of the trial court is affirmed.
 {¶ 2} Appellant and appellee, Delores Wiczynski, were married on May 16, 1951. Four children were born as issue of the marriage: Patricia and Cynthia, now emancipated; Gregory, deceased; and Jeffrey, born May 19, 1968, who remains unemancipated due to Down syndrome. On July 28, 1986, appellee filed a complaint for alimony only, in which she sought spousal support, child support, an equitable division of the parties' marital property and sole custody of Jeffrey. On September 4, 1986, appellant filed an answer and complaint for divorce.
 {¶ 3} Hearings on the matter were held November 6, 1986 and January 16, 1987. The trial court filed its findings of fact and conclusions of law on August 11, 1988. Therein, the court found that the then-20-year-old Jeffrey "is a mentally handicapped child," and "although having reached the age of majority, is suffering from Down's syndrome and will need custodial care for the rest of his life." In discussing the court's order for child support, the trial court specifically referred to Jeffrey as the "minor" child and concluded that "[b]ecause of the minor child's mental condition the support payments shall be paid beyond the child's 18th birthday and shall terminate only upon the death of the child, or further order of the court."
 {¶ 4} On November 3, 1988, the trial court filed a judgment entry in which it granted appellee's request for alimony and dismissed appellant's complaint for divorce. In the same judgment entry, the trial court designated appellee as Jeffrey's residential parent and legal custodian, ordered appellant to pay child support and permanent spousal support, and divided the marital assets. Throughout the entry, the court consistently refers to Jeffrey as a "minor" child.
 {¶ 5} This court affirmed the trial court's judgment in a decision issued on August 11, 1989.
 {¶ 6} On January 31, 1997, appellee filed a motion to convert her action for alimony only into an action for divorce. The motion was granted, and on September 18, 1997, a hearing was held on the action. On January 6, 1998, the trial court filed a decision granting the parties a divorce, designating appellee as Jeffrey's residential parent and legal custodian, ordering appellant to pay spousal and child support, and dividing the marital estate. Once again, Jeffrey is referred to in the decision as a "minor" child, with the trial court specifically noting that "[a]t the hearing on the parties' legal separation Jeffrey Wiczynski was deemed to be unemancipated even while he is over the age of eighteen because of a disability." The court reaffirmed the finding that Jeffrey was unemancipated due to having Down syndrome and specifically asserted jurisdiction over him and the issues of his custody, companionship and support.
 {¶ 7} On March 25, 1998, the trial court filed a nunc pro tunc judgment entry setting forth the precise manner in which the marital estate was to be divided and designating appellee as Jeffrey's residential parent and legal custodian. Finding that in 1997, appellant had an annual gross income of $73,491 and appellee had an annual gross income of $0, the court ordered appellant to pay appellee child support in the amount of $758.10 per month, plus a two percent processing fee, and permanent spousal support in the amount of $800 per month, plus a two percent processing fee. In the entry, the trial court once again noted that Jeffrey is unemancipated due to the permanent disability of Down syndrome and, this time, specifically found that it was appellant's statutory and common-law duty to support his disabled child during the child's lifetime. Appellant appealed the trial court's decision and on February 26, 1999, this court issued a decision affirming the trial court's judgment.
 {¶ 8} On September 15, 2003, appellant filed a "Motion to Stop Payment of Child Support and Spousal Support or in the Alternative to Decrease the Same." And on June 25, 2004, appellant filed a "Motion to Dismiss or to Strike Judgment entry of March 5, 1998, Specifically Orders of Custody and Child Support, Pursuant to Civil Rules 12(B)(1) and 12(B)(2), wherein he argued that the trial court, having never made a decision that Jeffrey was disabled prior to his eighteenth birthday, lacked jurisdiction over the child sufficient to order appellant to continue paying support. The magistrate, in a decision dated November 3, 2004, dismissed this argument, finding that this court's decisions affirming the trial court's decisions in this case rendered appellant's jurisdictional argument moot. Thereafter, the magistrate specifically found that Jeffrey's $9,000 Social Security Income benefits did not constitute a financial resource for purposes of justifying deviation from the basic child support schedule and, based on a change of circumstances — in particular, the increase in appellant's income — modified his child support award to $1,056.24.
 {¶ 9} In a judgment entry filed March 15, 2005, the trial court sustained in part and modified in part the magistrate's decision, specifically finding that the court "has and continues to have in rem and in personam jurisdiction." In addition, the trial court found there had been a significant change of circumstances and, despite the fact that the matter before it was brought by appellant for termination of child support, the court "by virtue of [appellant's] having invoked the continuing jurisdiction of the Court to review the child support matters" had "the prerogative and the duty to determine the current child support obligations of the parties." After recalculating the incomes of the respective parties, the court ordered that, effective September 15, 2003, appellant was to pay child support in the amount of $968.99 per month, plus a two percent processing fee. (This had the effect of decreasing the magistrate's award by $87.25.) In addition, the court ordered that appellant pay the monthly sum of $193.80, plus a two percent processing fee, to be applied to child support arrearages until paid in full and then to spousal support arrearages, if any, until paid in full. The court further ordered that appellant continue payment of his spousal support in the amount of $800, plus a two percent processing fee, until further order of the court. In all other respects, the trial court found the magistrate's decision to be well-founded both in fact and in law.
 {¶ 10} Appellant timely appealed the judgment of the trial court, raising the following as his sole assignment of error:
 {¶ 11} "THE TRIAL COURT ERRED IN CONTINUING TO MAINTAIN INREM AND IN PERSONAM JURISDICTION OVER THE MATTERS OF CUSTODY AND CHILD SUPPORT FOR JEFFREY WICZYNSKI, THE ADULT CHILD OF THE PARTIES."
 {¶ 12} Appellant argues that it was error for the trial court to deny his motion to dismiss pursuant to Civ.R. 12(B)(1) and (2), because at the time the parties filed for divorce in 1986, Jeffrey was already 18 years old and, thus, issues of Jeffrey's custody and support were never within the jurisdiction of the domestic relations court.
 {¶ 13} The jurisdiction of the domestic relations court as applied to the instant case is set forth at R.C. 3109.04. R.C.3109.04 provides that "[i]n any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, * * * the [domestic relations] court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage."
 {¶ 14} If, as appellant suggests, Jeffrey was no longer a minor when proceedings were initiated in this case, appellant would necessarily prevail under the terms of R.C. 3109.04.
 {¶ 15} Ordinarily, a parent's duty to support a child continues until the child reaches the age of majority, which, for a normal child, is regarded by the law as occurring when the child turns eighteen. See Castle v. Castle (1984),15 Ohio St.3d 279, 282; see also, R.C. 3109.01. However, in Castle v.Castle (1984), 15 Ohio St.3d 279, the Supreme Court of Ohio found that parents of a disabled child have a common law duty to support that child even beyond the age of 18. Id.
 {¶ 16} In Castle, the Supreme Court of Ohio established that it is the role of the domestic relations court to determine issues of continuing support in cases involving disabled children. Specifically, the court held that "[t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." Id. at syllabus, paragraph one. The court went on to state that "[t]he domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child who was so disabled before he or she attained the statutory age of majority, as if the child were still an infant." Id. (emphasis added).
 {¶ 17} Although the holdings in Castle do not squarely address the issue before us (in that they address continuing jurisdiction of the domestic relations court, rather than the attachment of jurisdiction), they, and the analysis that gives rise to them, are nevertheless instructive herein. We are guided, in particular, by the following reasoning that was quoted by the Ohio Supreme Court in that case:
 {¶ 18} "`* * * [G]enerally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for support ceases.'" Id., quoting Davis v. Davis (1954), 246 Iowa 262. The court further found that "[t]he duty of parents to provide for the maintenance of their children has been described by Blackstone as a `principle of [the] natural law,' `an obligation * * * laid on them not only by nature herself, but by their own proper act, in bringing them into the world: * * * By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved.' 1 Blackstone's Commentaries (Lewis Ed. 1897) 419.
 {¶ 19} "In 2 Kent's Commentaries on American Law (1884) 190, it is stated: `The wants and weaknesses of children render it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law. The obligation on the part of the parent to maintain the child continues until the latter is in a condition to provide for its own maintenance * * *.'
 {¶ 20} "In the case of mentally or physically disabled children there must exist a duty both morally and legally on parents to support and maintain such children." Id., at 282-283.
 {¶ 21} R.C. 3109.01 defines the age of majority and, like the holdings in Castle, is reflective of the notion that mentally or physically disabled children should be excepted from a strictly age-based emancipation rule. Under R.C. 3109.01, "All persons of the age of eighteen years or more, who are under nolegal disability, are capable of contracting and are of full age for all purposes." (Emphasis added.)
 {¶ 22} Because the term "legal disability" is not defined at R.C. Chapter 3109, we look to R.C. 2131.02, which although specifically applicable to probate matters, nevertheless aids in our analysis. R.C. 2131.02 includes in its definition of "legal disability" "persons of unsound mind." R.C. 2131.02(B). And R.C.1.02(C) defines the term "of unsound mind" as including all forms of mental retardation.
 {¶ 23} Applying the above-stated law to the facts of this case, we find that Jeffrey, as one undisputedly unable to support himself due to his mental retardation, was properly found by the trial court as never having reached the "age of majority" as defined at R.C. 3109.01.[1] Stated otherwise, Jeffrey, because of his mental condition (and despite his chronological age), was properly found by the trial court to be a minor. Cf.Abbas v. Abbas (1998), 128 Ohio App.3d 513 (holding that the trial court, in granting custody of 25-year old disabled child to parent, was essentially asserting that child had not reached the age of majority, and in that way obtained jurisdiction over the child.) As a result, we find that the trial court, which from the beginning has had jurisdiction over Jeffrey and the issues of his custody and support, properly denied appellant's motion to dismiss.
 {¶ 24} For all of the foregoing reasons, appellant's assignment of error is found not well-taken. Accordingly, the judgment of the Lucas County Court of Common Pleas, Domestic Division, is affirmed.
 {¶ 25} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Skow, J. Parish, J. concur.
[1] We note that both the Supreme Court of Ohio in Castle and the trial court in this case, appear, at times, to use the term "age of majority" interchangeably (and incorrectly) with the term "18 years of age," without regard to the fact that in order to truly be at the "age of majority," a person must be under no legal disability. R.C. 3109.01. In Castle, for example, the court relevantly states at its syllabus: "The common-law duty imposed on parents to support their minor children may be found * * * to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities * * *." Id., at syllabus paragraph one. In this case, the trial court in its Aug. 11, 1988 findings of fact and conclusions of law provided that Jeffrey "although having reached the age of majority, is suffering from Down's syndrome and will need custodial care for the rest of his life." Such improper use of the term "age of majority" can lead to significant confusion, particularly in a case such as the one at hand.