[Cite as *Brown v. Brown*, 2025-Ohio-1998.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mervin Brown, | : | |
| Plaintiff-Appellee, | : | No. 24AP-285 |
| | | (C.P.C. No. 22DR-0880) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Tracey Brown, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 5, 2025

**On brief**: *Trolinger Law Offices LLC* and *Christopher L. Trolinger*, for appellant. **Argued**: *Christopher L. Trolinger*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Tracey Brown, appeals from a decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating her marriage to plaintiff-appellee, Mervin Brown. Appellee did not file a brief in this action. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2} The parties were married on November 29, 1985 and had four children. Three of the children emancipated. One child, M.B., was born on December 30, 1997 with a chromosomal disorder and was severely disabled from the time of his birth. (Feb. 12, 2024 Tr. at 109-10.) M.B. was not able to walk or talk, could not physically or mentally care for himself, and required daily care for the duration of his life including a special short gut diet, a feeding tube, a hospital bed, and a wheelchair. (Feb. 12, 2024 Tr. at 109-13.)

{¶ 3} On March 17, 2022, appellee filed a complaint for divorce. Appellant filed an answer and counterclaim for divorce on April 21, 2022. The trial court issued temporary orders on October 11, 2022 finding M.B. to be a "*Castle* child" within the meaning of *Castle v. Castle*, 15 Ohio St.3d 279 (1984), and requiring appellee to pay child support to appellant in the amount of $539.53 per month for M.B.'s care. The trial court ordered the parties to equally split the cost of M.B.'s medical expenses.

{¶ 4} Appellee filed a motion to modify the temporary orders on October 26, 2022. The magistrate denied appellee's motion to modify in a January 13, 2023 magistrate's order. Appellee then filed an objection to the magistrate's order arguing it was contrary to this court's decision in *Geygan v. Geygan*, 2012-Ohio-1965 (10th Dist.), which held a domestic relations court lacks jurisdiction to enter a child support order for a disabled child who is older than the age of 18 at the time the divorce decree is issued. In an April 11, 2023 decision and judgment entry, the trial court sustained appellee's objection and granted the motion to set aside the magistrate's order. The trial court determined that, despite other appellate districts in Ohio consistently finding to the contrary, it was bound by *Geygan* and was therefore compelled to conclude it did not have jurisdiction to establish child support because M.B. had already reached the age of 18 before the divorce proceedings.

{¶ 5} On February 12, 2024, the trial court conducted a final hearing. Subsequently, on April 2, 2024, the trial court issued a judgment entry and decree of divorce. The trial court did not order either party to pay spousal support and reiterated its prior finding from the April 11, 2023 decision and judgment entry that the court did not have jurisdiction to award child support for M.B. (Decision and Jgmt. Entry at 9, 18-19.)

{¶ 6} Appellant timely appeals. On November 12, 2024, after appellant filed her merit brief in this appeal, M.B. passed away. (Supplemental Brief at 3.) Appellant then submitted a supplemental brief addressing the issue of whether M.B.'s death rendered the appeal moot.

## II. Assignments of Error

{¶ 7} Appellant raises the following assignments of error for our review:

> [I.] The trial court erred as a matter of law and abused its discretion in finding that a parent of a disabled child that attained the age of eighteen while under a legal disability is

inel[i]gible to receive child support as the domestic relations court did not have jurisdiction.

[II.] The trial court erred and violated the equal protection clause of the United States Constitution's Fourteenth Amendment and the Ohio Constitution in finding that parents of disabled children that divorce prior to the child reaching the age of eighteen may receive child support beyond the age of eighteen but parents of disabled children that obtain the age of eighteen prior to the filing of divorce cannot receive child support.

## III. Mootness

{¶ 8} Before we consider the merits of appellant's assignments of error, we address the issue of mootness. After appellant filed her notice of appeal and merit brief with this court but before the matter came for oral argument, appellant notified this court of M.B.'s November 12, 2024 death. (Supplemental Brief at 3.) In a January 10, 2025 journal entry, we ordered appellant to submit supplemental briefing "addressing the issue of whether [M.B.]'s death has rendered this appeal moot." (Jan. 10, 2025 Journal Entry.) Appellant filed her supplemental brief on January 29, 2025.

{¶ 9} As a general matter, an appellate court does not decide moot appeals. *Parris v. Chapman*, 2021-Ohio-3501, ¶ 16 (10th Dist.), citing *Rithy Properties, Inc. v. Cheeseman*, 2016-Ohio-1602, ¶ 14 (10th Dist.). "Moot appeals involve no actual genuine live controversy, the decision of which can definitely affect existing legal relations." *Id.*, citing *In re L.W.*, 2006-Ohio-644, ¶ 11 (10th Dist.). Thus, an appeal is rendered moot when, even if a reviewing court were to rule in favor of the party seeking relief, it is impossible for the court to grant meaningful relief. *Id.*, citing *Dublin v. Friedman*, 2017-Ohio-9127, ¶ 21 (10th Dist.).

{¶ 10} Appellant acknowledges that M.B.'s death represents a cut-off date in any future claims to child support, but she argues the appeal is not moot because she still seeks relief in the form of child support backdated from the date of filing her counterclaim for divorce through the time of M.B.'s death. We agree with appellant that a backdated award of child support would be meaningful relief and, thus, her appeal is not moot. *See, e.g., Lichtenstein v. Lichtenstein*, 2020-Ohio-5080, ¶ 63 (8th Dist.) (final divorce decree did not

render moot wife's motion to modify temporary support orders because the issue was whether she was entitled to temporary support from the date of the final divorce hearing until the court issued the final divorce decree). Accordingly, we address the merits of appellant's appeal.

## IV. First Assignment of Error—Trial Court's Jurisdiction

{¶ 11} In her first assignment of error, appellant argues the trial court erred in concluding it lacked jurisdiction to award child support for M.B.'s care because he was older than the age of 18 when the parties divorced.

{¶ 12} A trial court has discretion to determine child support obligations, and an appellate court will not disturb the trial court's child support determination unless the trial court has abused its discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27. Here, however, appellant argues the trial court erred in its application of R.C. 3119.86 to conclude it lacked jurisdiction to enter a child support order for a *Castle* child. The application of a statute presents a question of law that we review de novo. *Zibaie v. Zibaie*, 2024-Ohio-1140, ¶ 28 (10th Dist.), citing *TBF Fin. L.L.C. v. Wilkerson*, 2019-Ohio-3493, ¶ 11 (10th Dist.); *Ramsey v. Ramsey*, 2014-Ohio-1921, ¶ 29 (10th Dist.). Additionally, appellate courts review determinations of subject-matter jurisdiction under a de novo standard. *Bruner Holdings, LLC v. Sleeper*, 2024-Ohio-2925, ¶ 20 (10th Dist.), citing *Pointer v. Smith*, 2021-Ohio-2247, ¶ 8 (10th Dist.).

{¶ 13} R.C. 3105.011(A) explicitly confers on the domestic court "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." In a divorce proceeding, the domestic relations court "shall allocate the parental rights and responsibilities for the care of the minor children of the marriage." R.C. 3109.04(A). Under R.C. 3109.05(A)(1), "the court may order either or both parents to support or help support their children."

{¶ 14} In *Castle*, 15 Ohio St.3d 279, the Supreme Court of Ohio held "[t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority

if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Castle* at paragraph one of the syllabus. The child in *Castle* was 13 years old at the time of her parents' divorce but had the mental age of a 5-year-old and would never be able to support herself. *Id.* at 280. When the parents divorced, the father was ordered to pay child support, but he discontinued support payments when the child turned 18 and filed a motion to terminate the child support obligation. *Id.* The trial court granted the father's motion because the child was over the age of 18 and received Social Security disability payments. *Id.* The court of appeals reversed the trial court, finding a common-law duty of continued support beyond the age of majority of developmentally disabled children. *Id.* The Supreme Court affirmed the court of appeals and held "a domestic relations court has jurisdiction to order a noncustodial parent to continue to provide support after the age of majority if the child is physically or mentally disabled to the extent of being incapable of maintaining himself or herself." *Id.* at 283.

{¶ 15} After the Supreme Court's decision in *Castle*, the General Assembly adopted R.C. 3119.86, effectively codifying the *Castle* decision. *See Yost v. Yost*, 2003-Ohio-3754, ¶ 10 (4th Dist.); *Geygan*, 2012-Ohio-1965, at ¶ 10. The version of R.C. 3119.86 in effect at the time of the trial court's decision below states, in pertinent part:

> (A) Notwithstanding section 3109.01 of the Revised Code, both of the following apply:
>
> (1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.

Former R.C. 3119.86(A)(1)(a) (2024 version). In turn, R.C. 3109.01 defines the "age of majority," and states "[a]ll persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes."

{¶ 16} In granting appellee's motion to set aside the magistrate's order, the trial court found that although M.B. qualifies as a *Castle* child, the trial court nonetheless lacked jurisdiction to enter a child support order for M.B. under R.C. 3119.86. The trial court stated it was compelled to follow this court's precedent in *Geygan*, which held the domestic

relations court lacked jurisdiction to enter a child support order relating to a disabled child because the disabled child was over the age of 18 at the time of the divorce. Appellant acknowledges the trial court followed *Geygan* in rendering its judgment but nonetheless argues *Geygan*, and therefore the trial court, erroneously interpreted R.C. 3119.86.

{¶ 17} In *Geygan*, this court determined both *Castle* and former R.C. 3119.86(A)(1)(a) involve the domestic relations court exercising *continuing* jurisdiction to modify or enforce child support orders for a disabled child where (1) the disabled child was disabled prior to reaching the age of 18, and (2) the child support order was first issued prior to the disabled child reaching the age of 18. *Geygan* at ¶ 11-12. This court reasoned that because R.C. 3119.86 used the words "continue" and "beyond," continued support for a disabled child applies only when the initial support order is entered prior to the child reaching the age of 18. *Geygan* at ¶ 17.

{¶ 18} More than a decade has passed since this court issued *Geygan*, and, until now, this court has not had the occasion to revisit this jurisdictional question. Having examined *Castle* and the version of R.C. 3119.86 in effect at the time of the trial court's decision, we believe *Geygan* was wrongly decided.

{¶ 19} In interpreting a statute, a court's duty is not to delete or insert words but to give effect to the words used. *State v. E.K.*, 2024-Ohio-5496, ¶ 12 (10th Dist.), citing *State v. Maxwell*, 2002-Ohio-2121, ¶ 10. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 2005-Ohio-3095, ¶ 11. "Ambiguity exists only if the language of the statute is susceptible of more than one reasonable interpretation." *E.K.* at ¶ 12, citing *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513 (1996).

{¶ 20} To discern legislative intent, a court must first consider the statutory language, "reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South-Western City Schools v. Anthony*, 2005-Ohio-5362, ¶ 40. In concluding R.C. 3119.86 did not apply to a

situation involving a disabled child who was disabled prior to reaching the age of 18 but where no support order had been issued prior to the child reaching age 18, this court stated in *Geygan*:

> [I]n enacting R.C. 3119.86, the General Assembly considered the question of child support for adult children with disabilities. In so doing, legislators chose to incorporate the words "continue" and "beyond." The General Assembly, at the time of enactment or in a subsequent amendment, very easily could have deleted these words and stated simply that child support may be imposed for a child who is over the age of 18 and is mentally or physically disabled and incapable of supporting or maintaining himself or herself. It did not.
>
> For these reasons, we conclude that the domestic relations court lacked jurisdiction to enter a child support order relating to John because he was 38 years old at the time of the final judgment entry.

*Geygan*, 2012-Ohio-1965, at ¶ 17-18. Upon review, we find that analysis was both contrary to the tenets of statutory interpretation and internally inconsistent.

{¶ 21} In *Geygan*, this court fixated on "continue" and "beyond," isolating the words from their context and ignoring the plain language of the rest of the statute. *Choices for South-Western City Schools* at ¶ 40. To reach the conclusion that the domestic relations court lacked jurisdiction, this court unnecessarily narrowly construed the phrase "shall continue beyond" in R.C. 3119.86 as attaching only to the phrase "imposed pursuant to a court child support order" instead of more broadly attaching to the general phrase "duty of support." This exceptionally narrow reading of the statutory text deprives the broader language of the statute of its ordinary meaning and adds a requirement not found in the statute–that a child support order for the disabled child must already exist before the child reaches the age of 18 for the duty to support the disabled child to continue after the child reaches the age of 18. *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2014-Ohio-5511, ¶ 23 ("court[s] must give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly").

{¶ 22} Additionally, this court in *Geygan* made no effort to give effect to the definition of age of majority in R.C. 3109.01, which specifically requires the person to be of age 18 or more and "under no legal disability." Notably, this court recognized that R.C.

3119.86 "effectively codif[ied]" the Supreme Court's decision in *Castle* which found a parent's obligation to support a disabled child does not cease simply because the child turns 18. *Geygan* at ¶ 10. Though *Geygan* attempted to distinguish *Castle* on the facts, noting the child in *Castle* was younger than 18 when the parents divorced, nothing in *Castle* or the plain language of R.C. 3119.86 supports the *Geygan* court's conclusion that the timing of the parents' divorce is the dispositive inquiry for whether the domestic relations court retains jurisdiction to order child support for the first time for a disabled child over the age of 18. To the contrary, R.C. 3119.86 plainly applies "[n]otwithstanding" the age of majority in R.C. 3109.01, and *Castle* expressly holds "[t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Castle*, 15 Ohio St.3d at 283. The key inquiry under *Castle*, then, is not the timing of the parents' divorce but the age at which the child's disability occurred. The *Geygan* decision does not explain how its interpretation of R.C. 3119.86 is consistent with the broader holding in *Castle*.

{¶ 23} Other appellate districts that have considered the same question both before and after this court's decision in *Geygan* have reached the opposite conclusion. *See Abbas v. Abbas*, 128 Ohio App.3d 513 (7th Dist. 1998) (domestic court had jurisdiction to award child support for disabled child who was 25 years old at the time of the parents' divorce); *Wiczynski v. Wiczynski*, 2006-Ohio-867, ¶ 23 (6th Dist.) (domestic court had jurisdiction to award child support for adult disabled child who was older than 18 at the time of the parents' divorce); *In re Edgell*, 2010-Ohio-6435, ¶ 38 (11th Dist.) (following *Wiczynski*, *Castle*, and *Abbas* for "the strong public policy of this state requiring parents to be financially responsible for their children who suffer from disabilities prior to reaching the chronological age of majority"), *discretionary appeal not allowed* by *Edgell v. Edgell*, 2011-Ohio-2055; *Donohoo v. Donohoo*, 2012-Ohio-4105, ¶ 17 (12th Dist.) (disagreeing with *Geygan* and holding nothing in R.C. 3119.86 prohibits a domestic relations court from ordering child support in the first instance for a disabled child after the child turns 18); *In re Palcisco*, 2012-Ohio-6134, ¶ 22 (11th Dist.) (declining to follow *Geygan* and rejecting the argument that a support order must exist before the disabled child turns 18 in order for

support to be continued beyond the child's reaching the age of 18), *discretionary appeal not allowed* by *Palcisco v. Palcisco*, 2013-Ohio-1857; *C.S. v. R.S.*, 2021-Ohio-3581, ¶ 29 (5th Dist.) (declining to follow *Geygan*).

{¶ 24} We also note that after appellant filed her brief but before oral argument in this matter, the General Assembly amended R.C. 3119.86 to make it explicit that a domestic relations court has jurisdiction to enter child support orders for a disabled child even when the disabled child is older than 18 at the time of the parents' divorce. The current version of R.C. 3119.86(A)(1) provides "[t]he duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday . . . [u]nder an order *issued or modified pursuant to section 3109.20 or 3119.11 of the Revised Code* for a child who is mentally or physically disabled and is incapable of supporting or maintaining oneself." (Emphasis added.) R.C. 3109.20(B) provides: "Notwithstanding section 3109.01 of the Revised Code, a court may issue, pursuant to a proceeding for divorce, dissolution, legal separation, or annulment, an order of support for the care and maintenance of the parties' child who is a person with a disability, *regardless of whether the child has reached the age of majority*." (Emphasis added.) Further, R.C. 3119.11 provides: "Notwithstanding section 3109.01 of the Revised Code, when issuing or modifying a court child support order, a court may provide for the care and maintenance of a child who is a person with a disability and the subject of the order, to be issued or continue after the date the child reaches the age of majority. This section applies *regardless of whether the child is younger or older than the age of majority when the court issues or modifies the order*." (Emphasis added.) Though these amendments were not effective until March 20, 2025 and therefore not applicable to the trial court proceedings in this case, they provide further support for our conclusion that the intent of former R.C. 3119.86 was to confer jurisdiction on the domestic relations court to enter child support orders for disabled children whose disability occurred before they attained the age of 18 even when the parents' divorce does not occur until after the children have reached 18 years of age.

{¶ 25} Based on our interpretation of *Castle* and the statutory text of former R.C. 3119.86, we conclude *Geygan* was wrongly decided. We do not read former R.C. 3119.86 as applying only when the parents' divorce occurs before the disabled child reaches the age of 18. Instead, former R.C. 3119.86 is properly understood as extending the duty to support

a disabled child beyond the age of 18, and a child support order is the mechanism by which the domestic relations court implements that duty of support even where the parents do not divorce until after the disabled child has attained the age of 18. Thus, the domestic relations court had jurisdiction to enter a child support order for M.B. This conclusion aligns with the other appellate districts that have considered the matter and the understanding of the General Assembly as reflected in the recent amendments to R.C. 3119.86.

{¶ 26} We recognize this conclusion directly contradicts this court's previous holding in *Geygan*. "The doctrine of stare decisis forms 'the bedrock of the American judicial system.' " *T&R Properties v. Wimberly*, 2020-Ohio-4279, ¶ 43 (10th Dist.), quoting *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 1. Under the doctrine of stare decisis, "courts follow controlling precedent, thereby 'creating stability and predictability in our legal system.' " *In re Holycross*, 2007-Ohio-1, ¶ 22, quoting *Galatis* at ¶ 1. Though we are mindful of the vital role of stare decisis, we will not continue to perpetuate incorrect statements of law. *State v. Enyart*, 2023-Ohio-3373, ¶ 22 (10th Dist.), quoting *Cardon v. Northwest Airlines, Inc.*, 1990 Ohio App. LEXIS 1349, *4 (6th Dist. Apr. 6, 1990), citing *Mead v. McGraw*, 19 Ohio St. 55, 62 (1869) (" '[i]f a statement of law is incorrect, a court should not forbear to correct the error on the principal of *stare decisis*, but should right the wrong at the earliest opportunity' "). " 'It does no violence to the legal doctrine of *stare decisis* to right that which is clearly wrong. It serves no valid public purpose to allow incorrect opinions to remain in the body of our law.' " *Galatis* at ¶ 60, quoting *State ex rel. Bd. of Cty. Commrs. of Lake Cty. v. Zupancic*, 62 Ohio St.3d 297, 300 (1991). We cannot, in good conscience, continue to adhere–or issue precedent that binds trial courts to adhere–to *Geygan* in determining whether a domestic relations court has jurisdiction to enter a child support order for a disabled child whose disability occurred before turning 18 but who has reached 18 when the parties file for divorce. Accordingly, we overrule this court's decision in *Geygan* and hold the trial court did have jurisdiction to enter a child support order for the care of M.B., a disabled child whose disability occurred before he turned 18 but who was older than 18 at the time of the parties' divorce.

{¶ 27} When the trial court issued its April 11, 2023 decision and judgment entry and its subsequent April 2, 2024 decree of divorce, it reasonably relied on *Geygan* as the

controlling precedent to conclude it lacked jurisdiction to enter a child support order for M.B. Because this decision overrules *Geygan*, we must reverse the judgment of the trial court and remand the matter to determine the question of support for M.B from the time of appellant's counterclaim of divorce until the time of M.B.'s death. We therefore sustain appellant's first assignment of error.

## V. Second Assignment of Error—Equal Protection

{¶ 28} In her second assignment of error, appellant argues the trial court deprived her of equal protection of the laws when it concluded it could not award her child support for M.B.'s care. Having determined the trial court has jurisdiction to award child support for M.B. under former R.C. 3119.86, requiring reversal of the trial court's decision and remand to that court for further proceedings, we need not address the additional question of whether the trial court's decision deprives appellant of equal protection. Therefore, appellant's second assignment of error is moot, and we decline to address it. *Darr v. Livingston*, 2017-Ohio-841, ¶ 13 (10th Dist.), citing *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55 ("[a]n issue becomes moot when it presents only a hypothetical or academic question, and a judicial resolution of the issue would have no practical significance"); *State v. Gideon*, 2020-Ohio-5635, ¶ 26 ("an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court").

## VI. Disposition

{¶ 29} Based on the foregoing reasons, the trial court erred in concluding it lacked jurisdiction to enter a support order for M.B., a disabled child whose disability occurred before he turned 18 but who was older than 18 at the time of the parties' divorce. Having sustained appellant's first assignment of error, rendering moot appellant's second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

BEATTY BLUNT, J., concurs.

JAMISON, P.J., dissents.


JAMISON, P.J., dissenting.

{¶ 30} Because I do not agree that this court wrongly decided *Geygan v. Geygan*, 2012-Ohio-1965 (10th Dist.), I respectfully dissent.

{¶ 31} As the majority decision states, the General Assembly codified *Castle v. Castle*, 15 Ohio St.3d 279 (1984), when it enacted R.C. 3119.86(A)(1). In *Castle*, the Supreme Court of Ohio recognized that a domestic relations court with jurisdiction could find that a parent's common-law duty to support a minor child extended beyond the age of majority if the minor child was unable to support themselves because of mental and physical disabilities. *Id.* at paragraph one of the syllabus. By age of majority, the Supreme Court meant "the age of eighteen." *Id.* at 282. The two children at issue in *Castle* were under 18 when their parents divorced, and the domestic relations courts issued child support orders providing for their care and maintenance. Thus, the specific question at issue in *Castle* was whether the domestic relations courts could continue to enforce the child support orders entered when the disabled children were minors after those children reached the age of majority. Given the question before it, the court reached a limited holding:

> The domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or modify support payments for a mentally or physically disabled child, who was so disabled before he or she attained the statutory age of majority, as if the child were still an infant.

*Id.* at paragraph two of the syllabus.

{¶ 32} Based on *Castle*, the General Assembly enacted a statute focused on the continuance of child support:

> (A) Notwithstanding section 3109.01 of the Revised Code, . . . :
>
> (1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.

Former R.C. 3119.86(A)(1)(a).  In *Geygan*, we interpreted former R.C. 3119.86(A) to give effect to the General Assembly's use of the words "continue" and "beyond." *Geygan* at ¶ 17. Thus, despite the language of R.C. 3109.01—which would normally cut off child support when the child turned 18—former R.C. 3119.86(A) mandated that the duty to pay a child support order "continue[d] beyond the child's eighteenth birthday" if the child satisfied the criteria of R.C. 3119.86(A)(1).  For a child support order to continue beyond the child's eighteenth birthday, it necessarily had to exist prior to that birthday.  Consequently, former R.C. 3119.86(A)(1) only gave further life to child support orders issued for the support of a *minor* child.

{¶ 33} Contrary to the majority decision's analysis, in *Geygan*, we did not attach the phrase "shall continue beyond" only to the phrase "imposed pursuant to a court child support order."  Rather, we construed the word "duty" to be modified by all the phrases that follow: "of support," "to a child," and "imposed pursuant to a court child support order."  It is that particular duty—"[t]he duty of support to a child imposed pursuant to a child support order"—that must continue beyond the child's eighteenth birthday for a disabled minor.  In short, we interpreted former R.C. 3119.86(A)(1) to address the same problem *Castle* addressed: the continued enforcement of child support orders issued for disabled minors who, subsequent to a divorce, grow into disabled adults.

{¶ 34} The majority decision expands the language in former R.C. 3119.86(A)(1) to address a new problem: whether the domestic relations court may impose child support orders on parents for the care and maintenance of children who are mentally or physically disabled and cannot care for themselves, but are adults when their parents divorce. Meanwhile, the General Assembly has enacted new legislation to solve this problem.  That legislation specifies that a domestic relations court may issue a child support order for a "child who is a person with a disability" regardless of whether the child has reached "the age of majority."  R.C. 3109.20; 3119.11.  Tellingly, the General Assembly, while modifying R.C. 3119.86(A)(1) to include reference to R.C. 3109.20 and 3119.11, has maintained R.C. 3119.86(A)(1) as solely a statute requiring the *continuation* of previously issued child support orders.

{¶ 35} Quite simply, the democratic process has worked: the policy-making body of our government has resolved a policy issue previously unaddressed by statute.  This court

should not be reversing 13-year-old precedent at this late stage. Accordingly, I would overrule the first assignment of error.

{¶ 36} Overruling the first assignment of error would require consideration of the second assignment of error. Appellant did not raise her equal-protection argument in the trial court. An appellate court will not consider any error that a party could have brought to the trial court's attention, but did not. *My Friend's Place in Unity v. Dept. of Mental Health & Addiction Servs.*, 2024-Ohio-3257, ¶ 25 (10th Dist.); *Olentangy Commons Owner, L.L.C. v. Fawley*, 2023-Ohio-4039, ¶ 46 (10th Dist.). I thus would conclude that appellant forfeited her constitutional argument for purposes of appeal. Accordingly, I would overrule appellant's second assignment of error.

{¶ 37} In conclusion, I respectfully dissent from the majority's decision. I would overrule both assignments of error and affirm the trial court's judgment.

_____