[Cite as *Bittner v. Bittner*, 2025-Ohio-2333.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Randall Bittner, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 24AP-600 |
| v. | : | (C.P.C. No. 12DR-743) |
| Kriste Bittner, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 1, 2025

**On brief:** *Jonhenry Law, LLC*, and *Carol M. Jonhenry*, for appellant. **Argued:** *Carol M. Jonhenry*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Randall Bittner, appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling his objections to the March 4, 2024 magistrate's decision that denied in part his June 15, 2021 motion to modify child support in this legal separation case. The defendant-appellee, Kriste Bittner has not filed a brief.

{¶ 2} Randall and Kriste were married on February 15, 1992, and two children were born of the marriage: Alexis K. Bittner (d/o/b February 11, 1997) and Charles R. Bittner (d/o/b/ December 14, 2003)—Alexis is now 28 years old, and Charles is now 21 years old. The case for legal separation was filed in 2012, and the decree of separation was entered in 2013.

{¶ 3} Although there is some indication in the record that Alexis suffered from emotional and mental challenges at the time of the separation and thereafter, the parties

did not address that issue in the separation agreement, and the parties have never divorced. But their separation decree provided, in relevant part:

> Pursuant to guideline child support calculations, Plaintiff shall pay child support to Defendant in the amount of $592.02, plus processing charge. . . . Said payments shall continue for the child until he reaches age eighteen (18), dies, marries or otherwise is emancipated, whichever event shall first occur. In the event that any child shall reach the age of eighteen (18) and not otherwise be emancipated and continue to attend an accredited high school on a full time basis then said child support payments shall continue for so long as full time high school attendance is sustained.

(Sept. 26, 2013 Decree of Legal Separation at 3-4.) The decree did not specifically contemplate that child support might be awarded outside the periods described above, and the court did not specifically reserve further jurisdiction to modify the orders of child support.[1]

{¶ 4} On May 11, 2015, Kriste filed a motion to release the court's jurisdiction over Alexis, "in order to permit the Franklin County Probate Court to determine whether a guardian should be appointed" for her. (Mot. of Def. for Release of Jurisdiction at 1.) The motion argued that "Alexis had reached the age of 18 but is under disabilities affecting her ability to live on her own and care for herself." *Id.* at 2. On July 13, 2015, the trial court adopted and approved the magistrate's decision denying the motion in part, which found that:

> The magistrate finds that this court no longer has jurisdiction over the custody of Alexis. Alexis turned 18 years of age on February 11, 2015 and is now emancipated. The parties' Decree of Legal Separation does provide for child support to continue to be paid for Alexis after she reaches age 18. It states, "In the event that any child shall reach the age of eighteen (18) and not otherwise be emancipated and continue to attend an accredited high school on a full time basis then said child support payments shall continue for so long as full time high school attendance is sustained." While this court may continue to have jurisdiction over the support of Alexis Bittner, the court no longer has jurisdiction over the custody of Alexis. However, the court cannot grant Mother's motion because the court has no

---

[1] It is worth observing that the decree of separation also ordered Randall to pay spousal support to Kriste, and the decree did specifically state "The Court shall retain jurisdiction to modify spousal support as to amount and duration." (Sept. 26, 2013 Decree of Legal Separation at 10.)

> jurisdiction over Alexis' custody to relinquish to any other court.

(July 13, 2015 Jgmt. Entry Adopting Mag.'s Decision; Mag.'s Decision at 1-2.)

{¶ 5} Thereafter, on March 14, 2016—when Alexis was already 19—Kriste filed a motion to modify child support, arguing that she had in fact been appointed Alexis' legal guardian, that Alexis was "disabled and incapable of supporting or maintaining herself," and that Randall should "continue paying child support beyond the child's nineteenth birthday." (Mot. of Def. to Modify Child Support at 2.) On June 6, 2017, the parties resolved Kriste's motion in an agreed entry, which provides, in part:

> The parties have knowingly and voluntarily reached an agreement herein representing to the Court that their agreement is in the best interest of the children and that the agreement is fair and equitable as to both parties. . . .
>
> Notwithstanding anything to the contrary contained above, Plaintiff's obligation to pay child support to Defendant for the parties [sic] child, Alexis K. Bittner shall continue beyond her reaching the age of 19 and beyond her graduation from high school and shall continue until further order of the Court.
>
> Defendant shall notify Plaintiff when Alexis stops attending a high school program. In addition, Defendant shall notify Plaintiff if Alexis is approved for social security disability, Medicaid or social security insurance. Finally, Defendant shall notify Plaintiff regarding the status of Defendant's social security disability claim.
>
> Except as modified herein, all previous Orders of the Court shall remain in full force and effect.

(June 6, 2017 Agreed Jgmt. Entry at 1, 8.) The agreed entry did not contain any specific factfinding as to the nature of Alexis' purported disability or inability to support or maintain herself. Nor did it contain any temporal limitation on Randall's child support obligation for Alexis. Finally, it did not contain any specific reservation of jurisdiction over the issue of Randall's child support amount or obligation to pay child support beyond the above statement that support would "continue beyond her reaching the age of 19 and beyond her graduation from high school and shall continue until further order of the Court." *Id.*

{¶ 6} On June 15, 2021, Randall filed a motion to terminate his child support and child-related financial obligations, observing:

> Since the entry of the current support order, Defendant's income changed, and she began receiving Social Security disability payments, including a lump sum back payment in an amount unknown to Plaintiff. Plaintiff was ordered to disclose once her disability claim was approved, however she failed to do so as ordered and Defendant was unaware of her financial change for an extended period of time after. Additionally, Alexis Bittner has reached the age of majority and completed high school, however her support obligation is still ongoing. Plaintiff is unaware of the status of Alexis' Social Security disability claim and whether she receives any other financial income or support.

(June 15, 2021 Mot. to Modify Child Support at 2-3.) When Randall's motion ultimately went to a hearing, the magistrate indicated that her analysis was guided by both R.C. 3119.86(A)(1) and the common law that preceded the statute's enactment, which was enunciated by the Supreme Court of Ohio decision in *Castle v. Castle*, 15 Ohio St.3d 279 (1984). *Castle* held:

> The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority.
>
> The domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child, who was so disabled before he or she attained the statutory age of majority, as if the child were still an infant.

*Id*. at syllabus paragraphs one and two. And R.C. 3119.86 subsequently codified this rule:

> (A) Notwithstanding section 3109.01 of the Revised Code, both of the following apply:
>
> (1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
>
> (a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.
>
> (b) The child's parents have agreed to continue support beyond the child's eighteenth birthday pursuant to a separation

agreement that was incorporated into a decree of divorce or dissolution.

(c) The child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday.

. . .

(B) A court child support order shall not remain in effect after the child reaches nineteen years of age unless the order provides that the duty of support continues under circumstances described in division (A)(1)(a) or (b) of this section for any period after the child reaches age nineteen. An administrative child support order shall not remain in effect after the child reaches age nineteen.

. . .

(D) A parent ordered to pay support under a child support order shall continue to pay support under the order, including during seasonal vacation periods, until the order terminates.

In addition, the magistrate relied upon this court's decision in *Geygan v. Geygan*, 2012-Ohio-1965 (10th Dist.), *overruled by Brown v. Brown*, 2025-Ohio-1998 (10th Dist.), which concluded that neither *Castle* nor R.C. 3119.86 could be read to confer jurisdiction on the domestic relations court to order support for children who were already adults at the time of the divorce order. *Id.* at ¶ 9-18. In *Geygan*, this court concluded that while the statute permitted courts to impose support orders for children under the age of 18 at the time of the legal separation or divorce decree:

[I]n enacting R.C. 3119.86, the General Assembly considered the question of child support for adult children with disabilities. In so doing, legislators chose to incorporate the words "continue" and "beyond." The General Assembly, at the time of enactment or in a subsequent amendment, very easily could have deleted these words and stated simply that child support may be imposed for a child who is over the age of 18 and is mentally or physically disabled and incapable of supporting or maintaining himself or herself. It did not.

*Id.* at ¶ 17.[2]  The magistrate observed that the decree of legal separation required Randall to pay child support at the time it was entered, when Alexis was 15.  (Mar. 4, 2024 Mag.'s Decision at 9.) The magistrate observed that "[t]he duration of the child support order was extended beyond the typical legal requirement by requiring Father to pay until the child graduated from high school, without any limitation on the child's age." *Id.*  The magistrate then observed that the June 6, 2017 agreed judgment entry stated "that child support would continue to be paid for Alexis K. Bittner 'beyond her reaching the age of 19 and beyond her graduation from high school and shall continue until further order of the court.' " *Id.*  The magistrate determined that this language constituted an exercise of continuing jurisdiction, as "the evidence reflected that Alexis graduated from high school in June of 2017, and her graduation was a catalyst to terminate Father's support obligation for her, the court never lost jurisdiction over the issue of Alexis' support." *Id.*  The court held that the agreed entry's decision "to continue effective back to 03/14/16, a date more than a year before Alexis' graduation. . . . [Was] enforceable by the court pursuant to R. C. 3119.86 (A)(1) (b) and caselaw, regardless of the child's age." *Id.* at 9-10.

{¶ 7}  Randall argued that he no longer agreed with the requirement that he continue child support for Alexis, who was 23 years old at the time he filed his motion, and that there were "no prior findings of Alexis having a disability before she turned 18 years old," that the court was "now precluded from considering whether Alexis has any mental or physical health condition making her incapable of supporting or maintaining herself," and that "even if the court has jurisdiction to consider ongoing support for Alexis, she is not disabled . . . ." *Id.* at 11.  But the magistrate concluded that because the 2017 agreed entry "did not specify any particular event that was to be achieved by Alexis or what would occur when the parties no longer agreed. . . " and because the agreed entry instead "relied upon 'further order of the court' . . . . the only logical conclusion is that ongoing jurisdiction was retained for the court to determine whether ongoing support for Alexis is appropriate." The magistrate concluded that such support was appropriate:

> Mother credibly testified that the parties knew about Alexis
> before they adopted her and knew she had issues from birth.
> She was a "preemie," had fetal alcohol syndrome, failure to

---

[2] This court recently overruled *Geygan*. In *Brown v. Brown*, 2025-Ohio-1998 (10th Dist.), we held that trial courts have jurisdiction to enter a child support order for the care of disabled children whose disability occurred before they turn 18 but who are older than 18 at the time of the parties' divorce. *Id.* at ¶ 26.

thrive and multiple other things. Mother credibly testified that she has always kept in contact with Father about issues related to the child via texting until he filed for divorce. She further credibly testified that she had multiple conversations with Father throughout their marriage and Alexis' life about the child's cognitive delays and disabilities. She also credibly recalled having a verbal conversation with him, and stated the last time was on October 31, 2014. She also pointed out that Father was present at meetings at the child's elementary and subsequent schools about the child's cognitive delays and her IEPs.

Thereafter, when the child was going to turn 18 years old, Mother pursued and ultimately was granted a Guardianship of the person of Alexis K. Bittner in Franklin County Probate Court Case No. 570584. The Judgment Entry granting the guardianship was filed on August 12, 2015. The duration of the guardianship was indefinite and continued to remain in effect. Without considering the specific findings and details as the basis for establishing Alexis' guardianship, which were not admitted into evidence because of a lack of advance disclosure, this court still has to recognize generally that the legal basis for granting a guardianship is that a ward is considered to be incompetent.

. . .

The evidence revealed that Alexis continued to attend high school and finally graduated in June of 2017. She also graduated from a vocational school program in August of 2017. Mother credibly explained that it took Alexis an additional two years to graduate from high school because she could not pass the state mandated test to graduate. She went to a meeting and as a result, Alexis was placed on an IEP which gave her assistance in testing and studies and waived the state mandated graduation test. Alexis was enrolled in the vocational school for diesel mechanics. Mother explained that Alexis still needed assistance in getting through the classes from home and from professionals at the school.

*Id.* at 13-15. The magistrate also relied upon the testimony of Kriste's expert, Dr. Michael Saribalas, D.O.:

[Dr. Saribalas] also treats both of the parents in this case as well. [He] had his initial interview with Alexis on 01/6/2015 and a second appointment with her about three weeks later. He has continued to see Alexi[s] multiple times per year for approximately 6 ½ years. Dr. Saribalas determined that Alexis

suffers from major depression, generalized anxiety, panic disorder, and insomnia. He has described her intellectual disability as mild at times and at other times as severe. He reported that Alexis' speech, motor behavior, thought processes, affect, memory, concentration and comprehension and judgment appeared impaired to him. He has also reported her as demonstrating "Bradyphrenia," which includes a slow thought process, slow to respond, a flat affect and a poor memory. He also testified that Alexis presents "rather primitive" which he further described as "very delayed" and "vulnerable." Dr. Saribalas testified that he believes that it would be "extremely difficult" for Alexis to manage things on her own. He believes based on his interactions with Alexis, that her cognitive impairments are permanent and cause her to be unable to care for herself on her own. He further stated that Alexis was not able to handle her daily activities, like making decisions, maintaining her medical treatment, or managing her living arrangements or diet. His assessments were based upon how the child presented when she first came to him at age 17 and how she has continued to present to him in the 6+ years since then.

*Id.* at 15-16. Randall submitted the testimony of his own expert, Dr. Susan Rowland, Ph.D., who works for Forum Ohio and had previously evaluated Alexis to determine if she was eligible for Social Security Disability or Supplemental Social Security benefits. Based in part on Dr. Rowland's evaluation, such benefits had been denied:

Dr. Rowland evaluated Alexis Bittner on 11/09/2021 and submitted a report on 11/16/21 in conjunction with Alexis' claim for social security benefits. As part of the evaluation, Dr. Rowland evaluates whether applicants have any DSM-V (Diagnostic and Statistical Manual of Mental Disorders) diagnosis in making a determination and if the applicant is capable of working. Her report includes an evaluation of whether the applicant has the ability to follow instructions, the ability to concentrate at a reasonable pace, the ability to maintain productive relationships and the ability to tolerate normal pressures of employment. In evaluating Alexis, Dr. Roland met one time with Alexis for 45 minutes and later reviewed intake information provided. Dr. Rowland determined that Alexis could work. She did not perceive Alexis to have struggles with social interaction, and Alexis reported that she could drive alone, so it was determined that she would be capable of getting to work. Dr. Rowland also believed that Alexis was capable of managing stress in a day-to-day setting, and she was able to follow simple instructions. Further, Dr.

Rowland perceived Alexis' memory abilities to be intact. She believed that the memory inabilities demonstrated by Alexi[]s were feigned, which she concluded because of the nature of how Alexis responded. She also testified that individuals who have below average intelligence can work and function well Dr. Rowland further clarified that the questions of whether Alexis can live on her own, manage money, pay her bills, and whether Alexis was capable of supporting or maintaining herself were outside the scope of the determination she made. She also had not reviewed any of Alexis; medical or school records, and she indicated that she typically does not do that as part of her evaluations.

*Id.* at 17-18. After evaluating all this evidence, the magistrate concluded that Alexis "both before and since she attain[ed] the age of 18 years old, suffer[s] from intellectual disability, general anxiety, mental illness/insomnia, major depressive disorder and panic disorder. . . . [She is therefore] mentally disabled and incapable of supporting or maintaining herself pursuant to Ohio Revised Code §3119.86 (A)(1)(a)."

**{¶ 8}** As to Alexis' brother Charles, the magistrate observed although he had already reached the age of 19, he was still attending school part-time after that point, that Randall had testified he "was willing to continue paying child support for Charles . . . until December 24, 2022," Charles' 19th birthday, although he subsequently indicated he believed that he should really have no obligation to pay child support after the conclusion of the 2021-2022 school year. *Id.* at 18-19. The magistrate held that Charles "did continue to attend an accredited high school on a full-time basis after reaching the age of 18," and ordered that Randall's child support obligation for Charles terminated on December 24, 2022. *Id.* at 20.

**{¶ 9}** Randall filed objections, arguing that the trial court lacked jurisdiction to order ongoing child support for Alexis because she was not timely found to be disabled and unable to support herself under R.C. 3119.86(A)(1), that because Alexis was 19 at the time of the agreed entry that the court would not have had jurisdiction to order support pursuant to R.C. 3119.86(A)(1) and this court's decision in *Geygan*, and that even if the trial court did not wish to find it lacked jurisdiction to enter those orders that Alexis did not presently satisfy the requirements of the statute, as Dr. Saribalas "testified in his deposition that he has not completed any psychological, intellectual, or other objective testing of Alexis . . . , [that] repeatedly described his opinions as being 'subjective,' and [that] he acknowledged

the possibility that his opinions of Alexis' condition could have been based on isolated situations, such as her being tired that day or under the influence of specific medication that day . . . ," (Mar. 18, 2024 Pl.'s Objs. at 5-6) and that because the probate court's guardianship of Alexis was both after she turned 18 and uncontested, it was not reliable to demonstrate her disabilities for purposes of child support. Randall also contended that he should not have been ordered to pay child support for Charles after May 2022, as Charles had completed his full-time education by that point under state guidelines, since he was only deficient 2 credit hours—one in English and one in Social Studies—at the conclusion of the 2021-22 school year, "that a full course load was not even required per Ohio standards and that he did not fully participate in and complete the partial course load . . . during that additional Fall 2022 semester." *Id.* at 8.

{¶ 10} The trial court overruled Randall's objections, finding that it had jurisdiction throughout the case to consider the issue of support for Alexis, and that "[h]aving established the Magistrate had jurisdiction to order continuation of support for Alexis, the Court's *de novo* review finds the Magistrate's factual findings to likewise be correct." (Emphasis in orginal.) (Sept. 3, 2024 Jgmt. Entry at 5.) As to Charles, the trial court found that "nothing in the statute or controlling precedent indicates the Court must or even should, conduct an analysis of whether the child at issue *needs to attend* an accredited high school on a full-time basis," *id.* at 6 (emphasis added), only that Charles in fact *did* attend such an institution, and that "[w]hether Charles needed to do so is, ultimately, irrelevant to the analysis required by R.C. § 3119.86(A)(1)(c)." *Id.*

{¶ 11} On appeal to this court, Randall asserts six assignments of error that, in essence, recapitulate the arguments presented in his objections.

> **First Assignment of Error:** The trial court erred by ordering ongoing child support for Alexis Bittner pursuant to R.C. 3119.86(A)(1)[a] as it lacked jurisdiction to enter such orders.

> **Second Assignment of Error:** The trial court erred by finding Alexis Bittner was disabled and unable to support herself at the age of 18 years old.

> **Third Assignment of Error:** The trial court erred by finding Alexis Bittner is presently disabled and unable to support herself.

**Fourth Assignment of Error:** The trial court erred by indefinitely extending child support for Alexis Bittner based upon R.C. 3119.86(A)(1)[b] when the parties are no longer in agreement.

**Fifth Assignment of Error:** The trial court erred in continuing Plaintiff-Appellant's requirement to maintain health insurance coverage and to pay a portion of extraordinary medical expenses for Alexis Bittner beyond June 15, 2021.

**Sixth Assignment of Error:** The trial court erred in continuing the child support for Charles Bittner until he reached 19 years of age.

Save Randall's first assignment of error, these arguments are reviewed for an abuse of discretion. *See generally Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983) (domestic relations matters reviewed for abuse of discretion). His first assignment of error purports to assert an error of law and jurisdiction, which is reviewed de novo.

{¶ 12} In his first assignment of error, Randall argues that the trial court lacked jurisdiction to enter an order of support for Alexis, "when there were no prior findings of the child's disability and ability to support herself prior to reach 18 years of age." (Brief of Appellant at 16.) He argues that under this court's decision in *Geygan*, such a finding must be made prior to the child reaching the age of 18, that no such finding was contained in the record, and that pursuant to R.C. 3119.86 as interpreted in *Geygan* the trial court was limited to making a determination whether Alexis was mentally or physically disabled and incapable of supporting or maintaining herself at the age of 18, and that it could not consider whether she was disabled as of the date of the motion hearing without unfair prejudice to him.

{¶ 13} But this court has recently revisited *Geygan* and observed that "nothing in *Castle* or the plain language of R.C. 3119.86 supports the *Geygan* court's conclusion that the timing of the parents' divorce is the dispositive inquiry for whether the domestic relations court retains jurisdiction to order child support for the first time for a disabled child over the age of 18." *Brown*, 2025-Ohio-1998, at ¶ 22. The *Brown* court further observed that other district courts have resolved the same question differently, *id.* at ¶ 23, and that subsequent statutory changes both called into question *Geygan*'s analysis and also rendered the decision inoperative for the future. *Id.* at ¶ 24. Accordingly, this court

overruled *Geygan*, holding that trial courts have jurisdiction to enter a child support order for the care of disabled children whose disability occurred before they turn 18 but who are older than 18 at the time of the parties' divorce. *Id.* at ¶ 26.

{¶ 14} Viewing the trial court's order of support for Alexis in light of *Brown*, we have little difficulty concluding that the order was within its jurisdiction and authority. Under the standard set forth in *Brown*, the magistrate's conclusion that Alexis is "mentally disabled and incapable of supporting or maintaining herself pursuant to Ohio Revised Code §3119.86 (A)(1)(a)," and that such disability existed "both before and since she attain[ed] the age of 18 years old," is legally authorized. (*Compare* Mag.'s Decision at 9-10 *with Brown*, 2025-Ohio-1998, at ¶ 22-26.) Therefore, the trial court did not err by holding that that "the Magistrate was correct to issue her factual findings which held Alexis as fitting the criteria of R.C. § 3119.86(A)(1)(a)." (Jgmt. Entry at 5.) Randall's argument to the contrary rests upon the understanding that trial courts cannot issue new *Castle* orders after the age of majority, but that is the very understanding that *Brown* has now rejected. And because *Brown* held that *Geygan* is not good law, any error that the trial court might have committed by acting outside of *Geygan*'s parameters is no error at all. Randall's first assignment of error lacks merit and is overruled.

{¶ 15} Randall's second, third, fourth, and fifth assignments of error all asset arguments relating to the weight of the evidence supporting the orders of support and maintenance for Alexis. As to all of these issues, the trial court found that its "independent review hinges most heavily on the fact that Dr. Michael Saribalas', D.O., conclusions were based on multiple visits with Alexis over the course of several years," and that based on that evidence the court determined that "the Magistrate's factual findings to likewise be correct." *Id.* at 5. Given our own review of the evidence as set forth above and the wide latitude granted to trial courts in evaluating the strength of that evidence, we cannot say that the trial court's decision was an abuse of its discretion, and accordingly we overrule these assignments of error as well.

{¶ 16} Finally, in his sixth assignment of error, Randall challenges the trial court's decision to continue support of Charles until he reached the age of 19. Here, we conclude that the trial court did commit error. Under R.C. 3119.86(A)(1)(c), the duty of supporting a child beyond the age of 18 requires that "[t]he child continuously attends a recognized

and accredited high school on a full-time basis on and after the child's eighteenth birthday." Here, the uncontroverted evidence before the court established that Charles was not required to attend high school full-time beyond his 18th birthday, but also that he did not in fact do so—although he was enrolled for an additional semester, he only completed 1.5 credit hours of class, which was defined by the school as less than full-time attendance. Accordingly, we sustain Randall's sixth assignment of error and modify the trial court's order to vacate the amount of support awarded to Charles past his age of majority.

{¶ 17} For the foregoing reasons, we overrule Randall's first, second, third, fourth, and fifth assignments of error, sustain his sixth assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations as modified herein.

*Judgment affirmed as modified.*

MENTEL and BOGGS, JJ., concur.

———————————